**NEW YORK FIRE & MARINE UNDER-WRITERS, INC.**

v.

**H. B. FLEMING, d/b/a Tyler City Lines, Mary Alice Hamilton, and Andrew Blaylock.**

**Civ. A. No. 4666.**

United States District Court
E. D. Texas,
Tyler Division.

Nov. 30, 1967.

Spurlock & Schattman, Denning Schattman, Fort Worth, Tex., for plaintiff.

Johnson, Hathaway & Jackson, Thomas W. Hathaway, Tyler, Tex., for defendants H. B. Fleming, d/b/a Tyler City Lines, and Tyler City Lines, Inc.

Joe D. Clayton, Tyler, Tex., for defendant Mary Alice Hamilton.

Ramey, Brelsford, Flock & Devereux, (Tracy Crawford), Tyler, Tex., for defendant Andrew Blaylock.

## MEMORANDUM OPINION

GARZA, District Judge.

This action, which started as an interpleader action by the Plaintiff Insurance Company, has now turned into a case where the main issue is whether or not the insurance policy it had issued covered a city bus being operated in the city of Tyler, Texas, which was involved in an accident with another automobile on May 12, 1966.

The case was tried to the Court and evidence was heard, and the parties given an opportunity to file briefs.

On October 17, 1965, the Plaintiff Insurance Company issued a renewal policy of insurance to H. B. Fleming, d/b/a Tyler City Lines, covering three buses for the period 10/17/65 to 10/17/66. One of the buses listed in the policy was a 1954 GMC 29-Passenger Bus, TGH 3102223. The bus was inadvertently listed as a 1964 bus, but it has been agreed and stipulated by all counsel that in actuality it was a 1954 bus. The policy of insurance was a renewal of a policy which had been issued for the period 10/17/64 to 10/17/65, and both policies covered the same vehicles.

The McWilliams-Heard Insurance Agency had been writing this coverage and renewing the policies annually since at least 1961.

It was testified to that if there was any change in the buses to be covered, the Heard Agency would be notified and an endorsement would be attached to the policy, noting the changes. In fact, the 1954 GMC 29-Passenger Bus TGH 3102223 was added as of 2/27/64.

On May 12, 1966, a bus which was being operated by Doyle McCoy (who had been a driver for the Tyler City Lines for many years) was involved in an accident with another automobile, which gave rise to numerous claims both by fare-paying passengers on the bus and persons in the automobile with which the bus collided.

The Insurance Company was notified of the accident by H. B. Fleming.

The Insurance Company immediately began investigating the claims and disposing of them, and when it had paid out the sum of $8,274.40 it brought this interpleader action, depositing with the Court $11,725.60, claiming that the limits of its policy were $10,000.00 for one injury and $20,000.00 for one accident. It claimed that Mary Alice Hamilton, who was a passenger in the bus, and Andrew Blaylock, who was a passenger in the car that the bus collided with, were asserting claims under the said policy for personal injuries sustained in the accident, in excess of the policy limits. It tendered the balance of its limit, as aforesaid, and asked that the amount deposited be given to Mary Alice Hamilton and Andrew Blaylock as their interest might appear, and had Fleming, Blaylock and Hamilton served.

In his answer to the interpleader action, H. B. Fleming first asserted that the bus involved in the accident of May 12, 1966, was actually owned by Doyle McCoy who had purchased it on August 11, 1965.

Apparently Fleming had changed his mode of operation and had sold his buses to the drivers, and made arrangements with them under which they would operate on routes designated by him and charge the fares that he imposed; the drivers would maintain their buses and pay for their upkeep and running expenses and would pay him $15.00 a day for the privilege to operate on the routes that he designated, with the drivers keeping the fares collected.

He had made such an arrangement with Doyle McCoy and had gone with him to the Tyler Bank & Trust Company to get McCoy the money to purchase the bus. Fleming had made arrangements with the Bank that if McCoy did not pay his notes on the bus, he would take the bus back, and McCoy understood that if he failed in his payments to the Bank the bus would be returned to Fleming.

Fleming conducted his City Bus Line business in a shoddy manner. When McCoy, who cannot read or write and can barely sign his name, bought the

bus from Fleming, he was given the title certificate to a bus bearing Vehicle Identification No. TGH 3102225, but was actually given Bus No. 82 which had Vehicle Identification No. TGH 3102223, which was the bus that he had actually bought.

To further complicate matters, the bus, at the time of the accident, had 1966 Texas License No. U 856 which had actually been bought for the vehicle with Vehicle Identification No. TGH 3102225.

The Insurance Company argues that the bus actually involved in the accident was the one with Vehicle Identification No. TGH 3102225, which was not covered by the policy; but from all the evidence before me, I find that the bus involved in the accident was the bus with Vehicle Identification No. TGH 3102223, which was covered by the policy and was the bus that had been bought by McCoy and to which he was entitled to receive the correct certificate of title.

I find, therefore, that the bus involved in the accident was one of the buses covered by the insurance policy, but was at the time of the accident owned by Doyle McCoy under the arrangements which have been set out above.

Under the arrangements with McCoy, Fleming had agreed to purchase and pay for the insurance on the bus he purchased.

Fleming did not have a franchise from the City of Tyler, Texas, but had a temporary permit to operate the Tyler City Lines, and although there is no evidence that said permit required the obtaining of liability insurance by Fleming, the Plaintiff Insurance Company issued a certificate to the City of Tyler, showing that the policy in question had been issued and covered three city buses that were to operate on the city streets of Tyler, Texas.

From this fact, I find that it was understood by Fleming, who had requested the certificate be issued to the City of Tyler, Texas, that he had to obtain such insurance and have it in force before operating the buses on the city streets of Tyler. This is in line with the usual procedure of public conveyances which are allowed to operate on the streets of any Texas city.

The Plaintiff Insurance Company, New York Fire & Marine Underwriters, Inc., upon finding that the bus in question was not owned by Fleming, has now changed its action from an interpleader action to one for declaratory judgment, and is now claiming that it was not liable for any damages caused by it, and is seeking to recover the amount deposited in the registry of the Court in its original interpleader action, and is also demanding that H. B. Fleming pay the amount of claims that it has paid out, plus its expenses and attorney's fees, on the grounds that H. B. Fleming had to be the owner of the bus under the policy before it would be liable. It has also tendered the amount of the premium paid by Fleming, since it claims that the policy was void from the beginning.

It is admitted by all parties that no case with similar facts has been found in Texas. Both sides have, therefore, cited to the Court cases from other jurisdictions, and this Court being "Erie" bound must try to decide what a Texas court would do with this case.

The Plaintiff Insurance Company claims that the policy of insurance in question is what is known as an "Owner's Policy", and that under this type of policy, unless the insured is the owner of the vehicle involved in the accident, there is no coverage under the policy and no liability on the part of the insurer; and relies heavily on the case of Viator v. American General Insurance Co., Tex. Civ.App., 411 S.W.2d 762, Beaumont CCA, 1967, writ of error refused, NRE. This Court has no quarrel with that case or its outcome, but the facts here are very different and should be treated differently.

The Plaintiff Insurance Company, when it issued the policy in question, knew that it was issuing it to H. B. Fleming who was doing business as Tyler City Lines, and that it was covering three buses that would be operated in the

City of Tyler, which would be carrying passengers for hire. They knew that Fleming would not be driving the buses, or all of them, and that he would have to hire people such as Doyle McCoy to drive them. They never made any attempt to check into the drivers' of the buses or their financial status, and the Claimants Blaylock and Hamilton are alleging that the misrepresentation as to the ownership of the bus in question was not material to the risk undertaken by the Plaintiff Insurance Company. With this contention, this Court agrees.

The policy in question reads, in part, as follows:

"COVERAGE A—BODILY INJURY LIABILITY: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance *or use* of the automobile." (Emphasis supplied.)

Fleming was the operator of the Tyler City Lines and was using the bus in question through the arrangements made with McCoy in said endeavor. He, therefore, had an insurable interest in the bus in question and had obligated himself to provide said insurance, not only to the City of Tyler, as I have found heretofore, but also to McCoy; and the fact that he did not own the bus at the time of the accident in no way changed the risk which the Plaintiff Insurance Company had undertaken to insure.

The Plaintiff Insurance Company claims that Texas being an "Ownership" State, the question of insurable interest is not before us.

No Texas court has had this particular point before it under the facts of this case; and I believe that if the Texas Supreme Court ever had this point before it, it would find that under the facts of this case Fleming did have an insurable interest, and that that insurable interest should be sustained.

As has been stated, there are no Texas cases on the question of insurable interest. However, the majority of the States seem to follow the rule that is cited in 7 Am.Jur.2d 307, "Automobile Insurance", § 13, which states:

"The insurable interest required for automobile liability insurance is to be found in the interest that the insured has in the safety of those persons who may maintain, or the freedom from damage of property which may become the basis of, suits against him in case of their injury or destruction. The right to recover does not depend upon the insured's being holder, in fact, of either a legal or equitable title in the automobile, but upon whether he is primarily charged at law or in equity with the liability against which the insurance is taken out. Accordingly, a liability policy issued to one in whose name title to a vehicle stood is not invalid for want of insurable interest, though another was the real owner."

In 1 A.L.R.3d 1194, there is a good annotation on Insurable Interest. It follows the opinion in Western Casualty & Surety Co. v. Margy Herman, et al., 318 F.2d 50, 1 A.L.R.3d 1184, CCA 8, 1963. In that case the Court stated:

"Thus, despite technical semantic differences, the authorities are in apparent agreement that the only interest necessary to the validity of an automobile liability insurance policy is that the insured may incur liability because of the operation or use of the automobile."

I do not believe that Texas courts would hold otherwise.

There is no question here that the bus involved in the accident of May 12, 1966, was being used in the furtherance of the business of the Tyler City Lines. The Tyler City Lines had control over the rates, routes and schedules, and McCoy, the driver, testified that all the working arrangements were essentially the same as they were when he was paid a regular salary by the Bus Company. So if there was a misrepresentation as to the ownership of the bus, the risk insured against

was the same, and the Plaintiff Insurance Company should not be allowed to void the insurance contract.

In Hawkeye-Security Insurance Co. v. Presbitero & Sons, Inc., 209 F.2d 281, CCA 7, 1954, the Court held:

" * * * the essential element in the insurance contract is the use of the car and not the title thereto. So long as the use is within the terms of the policy, the fact that the owner is an employee of the corporation, and not the corporation itself does not materially affect the risk or hazard assumed by the insurer against liability to third persons for injuries resulting from the use of a car included in the policy. * * *

"The ownership is not the decisive fact. The use is all important, and, inasmuch as the insurer has placed no qualification upon the insured's right to permit any employee or whomsoever he wishes to use and operate the cars, the essential elements constituting the liability exist. This is obvious when we observe that if the corporation had held full title, the insurer would be under the same liability, inasmuch as the insured's employee, Michael O. Presbitero, was, by the policy authorized to operate and use the car."

To the same effect is the case of Abrams v. Maryland Casualty Co., 300 N.Y. 80, 89 N.E.2d 234, Ct.App. of N.Y. This case is very similar to the facts of the case before us. The named insured was Linden Farms and the policy required the insurer to pay damages arising out of the "ownership, maintenance or use" of the listed truck; this being the same language found in Coverage A of the policy in question.

After the policy had been issued to Linden Farms, title was transferred to Cohen, an employee truck driver for Linden Farms, without notifying the company of this action. The policy in the Abrams case was even stronger than the one in this case, for it provided that the policy did not apply to an accident which occurred "after the transfer * * * of the interest of the named insured" without the insurance company's written consent.

The Court in the Abrams case held that the policy provided insurance against liability caused by an accident arising not only out of the ownership of the automobile, but also out of its maintenance or use. The Court stated quite clearly the interest insured was more than ownership; quite clearly the policy covered any accident in which the vehicle was used or operated in such a way as to render the insured responsible. Since Linden continued to have the truck used in its business, it retained an interest that was insured by the policy; and the transfer of ownership did not relieve the defendant (Insurance Company) of its obligation.

The Viator v. American General Insurance Co. case, supra, relied on heavily by the Plaintiff Insurance Company, is correct, for there Martin, the original owner of the pickup in question, no longer had an insurable interest in the truck when it was turned over to Viator. This is not so in our case, as Fleming was still the operator of the city buses on the streets of the City of Tyler, Texas.

I, therefore, find that the policy in question issued by the Plaintiff Insurance Company is not void or voidable, but was in full force and effect and covered the damages claimed by the Claimants Blaylock and Hamilton who have, for the purposes of this suit, agreed to a division of the $11,725.60 deposited in the registry of this Court.

The attorneys for the Claimants will, therefore, prepare an appropriate judgment for entry in accordance with the Findings of Fact and Conclusions of Law expressed in this Memorandum Opinion, and submit it to other counsel for their approval as to form.