ALLSTATE INSURANCE COMPANY, Appellant,

v.

Robert SNYDER et al., Appellees.

No. 8146.

Court of Civil Appeals of Texas, Amarillo.

July 6, 1971.

Rehearing Denied Aug. 23, 1971.

J. B. Rhodes, Allstate's insured, and his wife were divorced and subsequent thereto he (Rhodes) purchased an automobile in his name but delivered same to his daughter, who resided with her mother after the divorce. Darla Rhodes was a high school student of the approximate age of 17 years at the time of the acquisition of the automobile. J. B. Rhodes secured a policy of insurance from Allstate and paid all premiums thereon. In January of 1969, some six or seven months subsequent to the purchase of the automobile, Darla Rhodes and Robert Snyder (also a high school student and minor) were involved in a collision while Snyder was driving the automobile and both parties suffered personal injuries as a result thereof. Fidelity and Casualty Company of New York was the insurer of John Snyder, the father of the minor Robert Snyder. The controversy here has arisen between Allstate and Fidelity as to which insurer was obligated under the terms of its policy to defend Robert Snyder and which insurer was responsible for the payment of damages to all parties. Allstate denies coverage altogether. Fidelity contends that Allstate has primary coverage and that Fidelity's coverage is limited to excess coverage only as to John Snyder's policy.

Smith, Boulter & Jesko, Albert Smith, Lubbock, for appellant.

Sanders, Scott, Saunders, Brian & Humphrey, Robert H. Smith, Underwood, Wilson, Sutton, Heare & Berry, H. C. Pipkin, Walter P. Wolfram, Gibson, Ochsner, Adkins, Harlan & Hankins, W. P. Sturdivant, Amarillo, for appellees.

JOY, Justice.

This is a suit brought by Allstate for determination of its liabilities under the policy of automobile insurance issued to J. B. Rhodes on an automobile in the possession of and used by Darla Rhodes, daughter of the insured, involved in a collision while driven by Robert Snyder with Darla Rhodes as a passenger. The trial court having withdrawn the case from the jury and granted judgment against Allstate has resulted in this appeal. Reversed and remanded.

Appellant Allstate's first two points contend that the automobile involved was owned by Darla Rhodes even though the certificate of title was issued and remained in the name of her father, J. B. Rhodes. Allstate further contends that we are required to look at only the evidence favorable to the losing party in view of the action of the trial court in withdrawing the case from the jury and rendering judgment as a matter of law. We agree with Allstate in this contention. If there existed any material issue of fact for determination by the jury, then the action was improper. Darla Rhodes, minor daughter, testified without objection that her father purchased the car for her as a gift. J. B. Rhodes, the named insured and father, testified in regard to more than one automobile being

**284** ∎

insured that "* * * one of them specifically was hers, * * *" and that title was maintained in his name because his daughter was a minor. We think it clear that a certificate of title raises a rebuttable presumption that the named owner is the actual owner of the registered automobile. Prichett v. Highway Insurance Underwriters et al., 158 Tex. 116, 309 S.W.2d 46 (1958); Pioneer Mut. Compensation Co. v. Diaz, 142 Tex. 184, 177 S.W. 2d 202 (1944). Appellees counter vigorously that appellant failed to plead ownership of the automobile in Darla Rhodes and therefore waived its right to assert that defense. Appellees, prior to the admission of the testimony referred to above, had objected to testimony offered by Allstate by way of statements and depositions in regard to the actual ownership of the automobile. When appellees themselves called J. B. Rhodes and Darla Rhodes as witnesses and offered the evidence they had previously objected to, they cannot now be heard to complain. Lubbock Bus Co. v. Pearson, 277 S.W.2d 186 (Tex.Civ.App.— Amarillo 1955, writ ref'd n. r. e.). Appellees point out that no trial amendment was permitted by the trial court, and urge that the issue of beneficial or actual ownership was not before the court. The trial court is authorized by Rule 66, Texas Rules of Civil Procedure, to permit pleadings to be amended freely, and to postpone the case to enable the objecting party to meet the evidence not conforming to the pleadings in the event of surprise. Here appellant Allstate plead in the alternative that the automobile was not owned by J. B. Rhodes, but owned by and registered in the name of Arjorie Lee Rhodes, the ex-wife of J. B. Rhodes. We doubt that appellees were surprised. The court, having withdrawn the case from the jury and ruled as a matter of law as to ownership of the vehicle, foreclosed the opportunity of appellant to request an issue as to ownership of the automobile by Darla Rhodes and the further opportunity to amend its pleadings. When facts of ownership are disputed, or the testimony of the interested parties is doubtful

or ambiguous as is herein presented, then ownership is an issue of fact to be determined by the trier of the facts. The evidence as presented was, to say the least, inconclusive. Appellees contend that the policy provisions do not require that the named insured be the owner of the vehicle. The pertinent provisions are as follows:

"PERSONS INSURED.

The following are insureds under Part I;

(a) with respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a) (1) or (2) above;

(b) with respect to a non-owned automobile,

(1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer, * * *".

"Relative" is defined in the policy as "* * a relative of the named insured who is a resident of the same household; * * *."

The policy further provides that " 'owned automobile' means (a) a private passenger, farm or utility automobile described in this policy for which a specific premium

charge indicates that coverage is afforded, * * * " and "non-owned" automobile is defined as " * * * (a) an automobile or trailer not owned by or furnished for the regular use of either the *named insured* or any *relative*, other than a temporary substitute automobile, * * *." (Emphasis ours.)

■ In reference to the construction of a contract of insurance we quote from 32 Tex.Jur.2d, § 55, p. 108:

"There is the general rule that contracts of insurance are to be strictly construed in favor of the insured, but this does not affect the further general rule that contracts of insurance are to be construed as other contracts, *and that all parts of the contract are to be taken together*, and such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties. * * *" (Emphasis ours.)

In considering the parts of the contract, from the insuring clause through "persons insured" and the definitions of "owned automobile" and "non-owned automobile" sections, we can arrive at only one conclusion, and that is that the named insured or a "relative," as therein defined, must own the automobile described in the policy, or it must fall in the classification of a non-owned automobile. Although, as pointed out by the appellees, since 1963 the Texas Standard Automobile Insurance Form in defining an owned automobile no longer contains the requirement that the named insured be the "sole owner"; however, considering all parts of the contract together, we arrive at the conclusion as herein stated above. Darla Rhodes, not being a "relative" as defined in the policy, was not insured by the policy if she was the actual owner of the automobile rather than J. B. Rhodes, the named insured. The testimony of both J. B. Rhodes and Darla Rhodes raised a fact question as to the actual ownership of the automobile that appellant Allstate was entitled to have sub-

mitted to the jury and the trial court erred in withdrawing the case and rendering judgment as a matter of law.

In view of the state of the evidence of this case, we are compelled in the interest of justice to remand the case.

Accordingly, the judgment of the trial court is reversed and the cause remanded for trial.

## ON MOTION FOR REHEARING

REYNOLDS, Justice.

I respectfully dissent. I would grant appellees' motions for rehearing and affirm the judgment of the trial court.

The declaratory judgment entered by the trial court has been reversed and remanded for a determination of the actual ownership of the automobile described in the automobile liability insurance policy. In so doing, the majority opinion inferentially has held, under the facts in this case, that the policy is effective only if the named insured is the actual owner of the automobile insured, although there is no policy provision either requiring the named insured to be the owner of the automobile insured, or excluding coverage if the named insured is not the owner of the described automobile. Since I believe the opinion places an impermissible interpretation on the provisions of the policy, particularly as applied to the circumstances in this case, I most respectfully enter my dissenting views.

At all times material to the events leading to the controversy before us, J. B. Rhodes and his wife were divorced, and their daughter, Darla, a 17-year old unemancipated minor, lived with her mother. J. B. Rhodes purchased for cash a 1962 Mercury automobile and the certificate of title was issued in his name. Upon his application, a policy of automobile liability insurance was issued by Allstate Insurance Company, hereinafter referred to as Allstate, naming J. B. Rhodes as the insured

and describing the automobile. By its policy of liability insurance, Allstate contracted with J. B. Rhodes, the named insured, to pay all sums he shall become legally obligated to pay as damages because of bodily injury or property damage "arising out of the ownership, maintenance or use of the owned automobile." The policy defines 'insureds,' with respect to the owned automobile, as

"(1) the named insured * * *,

"(2) any other person *using* such automobile with the permission of the named insured, provided his actual operation * * * thereof is within the scope of such permission * * *." (Emphasis added.)

"Owned Automobile" is defined in the policy as

"(a) a private passenger * * * automobile *described* in this policy for which * * * coverage is afforded." (Emphasis added.)

There is no policy provision requiring ownership of the automobile to be vested in any specific person.

Shortly after its purchase, Rhodes delivered the automobile to his daughter, Darla, with instructions as to the area of operation and the admonition that she should be careful who she let drive it. Some seven months thereafter, the automobile, while driven by Robert Snyder, a minor, with the permission and at the request of Darla, who was a passenger, was involved in a collision with an automobile driven by David Steagall, a minor, and in which Susan Passmore, a minor, was a passenger. The father of Robert Synder was the insured under a policy of automobile liability insurance issued by Fidelity & Casualty Company of New York, hereinafter referred to as Fidelity. So far as is material to this case, both policies of insurance carried almost identical terms as to automobile liability insurance coverage.

Suit was brought on behalf of Susan Passmore against Robert Snyder. Allstate and Fidelity participated equally in the settlement of this claim within the limits of either policy without prejudice to their rights under a stipulation that their responsibility, if any, under their respective policies would be judicially determined. Thereafter, suit was instituted on behalf of Robert Snyder against David Steagall for damages growing out of the accident.

Allstate filed this suit for a declaratory judgment, naming Robert Snyder and his parents; Darla Rhodes and her father, J. B. Rhodes; Susan Passmore and her parents; David Steagall and his parents; and Fidelity as party defendants. The petition generally recited the foregoing facts, alleged other actions had been or would be filed, and that all of the defendants were claiming that Allstate was obligated to defend Robert Snyder in all suits brought against Robert Snyder, J. B. Rhodes or Darla Rhodes, or all of them, as a result of the accident. The petition prayed for a declaration of the obligation, as between Allstate and Fidelity under their respective insurance policies, of who is obligated to defend whom in the law suits and who is obligated to pay the settlement made in the Passmore suit.

Trial began on June 21, 1970, before a jury. At the close of the evidence and after all parties had closed on June 24, 1970, the trial court withdrew the case from the jury and, as a matter of law, instructed a verdict for the defendants providing that: (1) Allstate is obligated to defend Robert Snyder, J. B. Rhodes and Darla Rhodes in all suits arising from the accident involving the 1962 Mercury "owned by J. B. Rhodes," and to pay all sums they shall be legally obligated to pay up to the policy limits; (2) Robert Snyder is entitled to recover specified medical expenses from Allstate under the policy for such expenses growing out of the accident; (3) Fidelity is obligated to pay any excess of the Allstate policy limits up to its policy limits; (4) Fidelity is entitled to recover from Allstate all sums paid in settlement of the Passmore suit; and (5) all costs are assessed against All-

state. The judgment was signed, dated and entered on September 9, 1970.

Allstate has appealed on four points of error. The points assert that the record conclusively shows that: (1) Fidelity, and not Allstate, had coverage on Robert Snyder since Darla Rhodes was the beneficial owner of the automobile; (2) Allstate is not liable because Darla Rhodes was the beneficial owner of the 1962 Mercury; (3) alternatively, the liability should be prorated between Allstate and Fidelity; and (4) Allstate was not liable to Robert Snyder under its policy medical pay provision.

In its first two points Allstate seeks to avoid liability under its policy because Darla Rhodes was the beneficial owner of the 1962 Mercury automobile and, therefore, not covered by the policy. I am of the opinion that these two points should be overruled. Allstate's live pleading at the time of trial was its first amended petition filed on June 15, 1970, six days before trial date. As between it and Fidelity, Allstate contended it was not obligated to defend Robert Snyder because its policy of insurance "does not cover anyone driving the Rhodes' automobile on the occasion in question other than J. B. Rhodes and Darla Rhodes. As a matter of fact, neither was driving the automobile at the time in question. J. B. Rhodes owned the automobile. Robert Snyder was driving the automobile directly contrary to the express instructions of J. B. Rhodes that Darla Rhodes permit no other person to drive the automobile." Alternatively, it was pleaded that "just recently received information" was "that the automobile was registered in the name of and belonged to Arjorie Lee Rhodes, the ex-wife of J. B. Rhodes," and that the policy "did not cover Robert Snyder, Arjorie Lee Rhodes, J. B. Rhodes or Darla Rhodes when the collision occurred." Also, alternatively, it was pleaded that the policies of Allstate and Fidelity required pro-rata defense of claims and payment of any liability. These were the only allegations through which Allstate sought to escape liability and which defendants were called upon to defend against when the case went to trial before the jury.

During the trial, at the first attempt to interject the question of ownership of the automobile being in Darla, all defense counsel objected to the admission of such evidence if it were being offered to prove Darla's ownership on the ground that there was no pleading to support the testimony. Defendants further objected because, if Allstate was then contending that Darla Rhodes owned the automobile, the defendants were surprised. The record is clear that defense counsel repeatedly objected and were allowed a running objection to all testimony concerning the ownership of the automobile being in Darla if it were offered to prove Darla's ownership because the defense was not plead. It is also clear that defense counsel stated and reiterated, and the court requested the record to reflect, the defendants' position that the issue of Darla's ownership of the automobile was not being tried by consent or waiver. In fact, the trial judge, in response to one of defense counsel's statements that there was no consent or waiver to trial of the issue of Darla's ownership, stated, "Well, your positions are well stated, you're protected."

The admitted testimony of both Rhodes and Darla was conflicting as to whether Rhodes owned the automobile and Darla was using it with his permission, or whether Rhodes had made a gift of the automobile to Darla. The record shows that no request was made during the trial, or prior to the court's instructed verdict, or prior to entry of judgment for permission to file a trial amendment. The record does show that, upon inquiry by the Court during the course of the objections mentioned above, Allstate's counsel stated, "We don't know who owns the car." On October 19, 1970, some 117 days after the trial court had announced its decision and some 40 days after the judgment had been signed and entered, and after notice of appeal and filing of appeal and supersedeas bonds and designation of the record, Allstate filed two motions

**288**

for permission to file a trial amendment. These proposed trial amendments, neither of which was dated but one was sworn to under the date of July 7, 1970, alleged ownership of the automobile to be in Darla Rhodes and that thereby Allstate was not liable under its policy. A form of an order granting permission to file the trial amendment was filed at the same time. The record does not show that either motion or the order, which was not signed, was presented to the trial judge or acted on by him.

It seems uncontradicted that *by its pleadings* Allstate was seeking a declaration of avoidance of liability under its policy on one of two grounds—either that Robert Snyder was driving the automobile without permission of the named insured or that Arjorie Lee Rhodes was the real owner. There absolutely is no evidence that Arjorie Lee Rhodes owned the 1962 Mercury automobile described in the policy. There is no pleading that J. B. Rhodes did not own the automobile; in fact, Allstate's live pleading was that "J. B: Rhodes owned the automobile."

The testimony that Darla was the owner of the automobile was elicited by Allstate and admitted over the objection there was no pleading to support this alleged ground of non-liability, except in one instance. Darla, in response to one of defense counsel's questioning as to the instructions or advice Rhodes gave her when the car was delivered into her possession, stated, "(H)e said it was my car, it was a gift to me * * *." Apparently it is this testimony upon which the majority opinion holds, in effect, that the issue of ownership was tried by consent when defendants offered the evidence previously objected to. Upon this premise, this court then says that the trial court, by withdrawing the case from the jury, foreclosed Allstate's opportunity to request an issue as to ownership and to mend its pleadings. The case of Lubbock Bus Company v. Pearson, 277 S.W.2d 186 (Tex.Civ.App.—Amarillo 1955, writ ref'd n. r. e.), cited in the majority opinion, does hold, and correctly so, that objections are

unavailing when the party who complains offers similar evidence to the same effect. But that case is not applicable to, or controlling of, the facts in the present case because the same point was not in issue. There, the question was only as to the general admissibility of evidence. Here, the objection was to the admission of the testimony *if* it were offered to prove an alleged defense not pleaded. I submit the prevailing authority on the point before us is not the *Pearson* case, but rather Harkey v. Texas Employers' Ins. Ass'n, 146 Tex. 504, 208 S.W.2d 919 (1948). There, the question was whether an issue not pleaded was tried by consent when *no* objection was made to the testimony, but objection was made to the submission of the matter to the jury on the ground there was no pleading authorizing the submission. The Supreme Court, in holding there was no consent by implication, said:

> " * * * Certainly issues are not *tried* merely by the hearing of the testimony thereon; submission to the jury undoubtedly is part of the process. So, although the complaining party does not object to the testimony on the issues but does object to their submission on some tenable ground, he cannot be regarded as impliedly consenting that they be tried when not raised by the pleadings, as contemplated by Rule 67."

In view of the repeated objections made to the testimony in the present case and the clear statements of appellees' position, it cannot be seriously contended that appellees would not have objected, and strenuously I suspect, to a proposed submission of Darla's ownership of the automobile. This record is clear, as manifested by the statement of facts and the judgment entered, that for whatever reason the trial judge admitted the testimony of Darla's ownership, it was not for the purpose of proving ownership under the pleadings before the court. This record is specific that such defense was not tried by consent or waiver, the court allowed a continuing objection, and had advised the appellees they were

protected. There was no necessity for further objection to the testimony. The facts amply demonstrate that not only was Allstate not foreclosed from timely amending its pleadings, it was given every opportunity to do so and simply failed to act. Although the record is replete with objections to testimony tending to raise the issue of Darla's ownership on the specific ground that the alleged defense was not pleaded, and that the issue was not waived or being tried by consent, Allstate did not at any time before judgment was rendered and signed and entered, so far as the record reflects, evidence any desire or request any permission to file a trial amendment, seeking to interpose a defense that Darla was the real owner of the automobile, or even that J. B. Rhodes was not the owner.

Therefore, in deference to the objection and the accord that the issue of ownership was not being tried by consent or waiver, special issues as to Darla's ownership properly were not submissive jury issues, Rule 277, Texas Rules of Civil Procedure; Harkey v. Texas Employers' Ins. Ass'n, supra, and the defense was waived by Allstate. Rule 279, T.R.C.P. There being no evidence that Arjorie Lee Rhodes owned the automobile, and confronted by Allstate's live pleading that J. B. Rhodes was the owner of the designated automobile, with evidence to support the allegation, there was no fact issue of ownership before the court when all parties closed.

J. B. Rhodes, then, as the named insured, had authority under the omnibus clause of the policy to allow his daughter to give permission to Snyder to drive and use the automobile. This permission, found by the trial court in support of its judgment and not questioned on appeal, was within the scope of Rhodes' instructions on permissive use when he delivered the automobile to Darla, and the use of the automobile at the time of the collision was for the same purpose for which the automobile was delivered to Darla. Furthermore, the original permittee, Darla, was riding in the automobile with the second permittee, Snyder, at the time of the collision. Thus, the use was within the coverage of the omnibus clause of Allstate's policy. Phoenix Ins. Co. v. Allstate Ins. Co., 412 S.W.2d 331 (Tex.Civ. App.—Corpus Christi 1967, no writ).

Additionally, there is no requirement in the policy that J. B. Rhodes be the sole owner of, or own any specific interest in, the 1962 Mercury automobile, or that liability coverage on the described automobile was, or would be, excluded if J. B. Rhodes did not own such automobile. The insurance coverage was on the policy *described* automobile, the 1962 Mercury involved in the collision. There is no contention that the language of the policy is ambiguous. The language is clear and must be given its plain meaning. Transport Ins. Co. v. Standard Oil Co. of Texas, 161 Tex. 93, 337 S.W.2d 284 (1960). Allstate's general liability was to pay on behalf of Rhodes all sums he became legally obligated to pay as damages through the ownership, maintenance or *use* of the automobile described in the policy involved in the collision. By the terms of the policy, liability under the policy was limited to certain circumstances, but non-ownership of the designated automobile was not one of them.

There is an apparent legal distinction between an insurance policy that insures a property right against loss and one for indemnity against liability for loss and injury caused others by the ownership, maintenance or use of an automobile described in the policy. 44 C.J.S. Insurance § 24. In the former, where the insurance is against loss by fire, theft, collision and the like, the named insured is required to have some real interest in the property. In the latter, the risk and hazard insured against are not the loss of the property, but against the loss and injury caused by the ownership, maintenance or use of the property described in the policy for which the named insured might be liable. 7 Blashfield Automobile Law and Practice, Third Edition, Insurance § 291.4. In the absence of a policy provision requiring the named insured to be the actual owner of the automobile described

in the policy, there seems to be no Texas case deciding the question of whether the named insured must be the actual owner of the described automobile for the insurance policy to be effective. All of the Texas cases requiring such ownership are those construing a policy with a specific ownership provision. In the absence of such policy provision, the settled authority is that the named insured does not have to have either a legal or equitable interest in the described automobile, and this is because the named insured is indemnified against loss and injury for which he might become liable, and not for the loss of the property described. 7 Am.Jur.2d, Automobile Insurance, § 13; 6 Blashfield Cyclopedia of Automobile Law and Practice § 3873. The liability, of course, may be predicated upon some casual act, i. e., negligent entrustment, as well as upon an overt act.

The named insured's liability coverage is primary where the additional insured is also covered by a non-ownership policy. 8 Appleman Insurance Law and Practice § 4914. It follows, then, that in this situation, Allstate's coverage is primary and Fidelity's coverage is excess, and the trial court was correct in so holding. Allstate's third point should be overruled.

The facts necessary to a recovery for Snyder's medical expenses, not to exceed the policy limits, were stipulated between Snyder's counsel and Allstate's counsel, conditioned upon Allstate's liability under its policy. In accordance with tenet expressed in this opinion, Allstate is liable under its policy medical pay provisions for Snyder's medical expenses, and the trial court was correct in so finding. Allstate's fourth point of error should be overruled.

For these reasons, I would grant appellees' motions for rehearing, overrule all of Allstate's points of error and affirm the judgment of the trial court. Inasmuch as this court has not done so, I respectfully dissent from the opinion of this court.