Robert SNYDER et al., Petitioners,

v.

**ALLSTATE INSURANCE COMPANY,**
Respondent.

No. B–2980.

Supreme Court of Texas.

June 28, 1972.

Rehearing Denied July 26, 1972.

Sanders, Scott, Saunders, Brian & Finney, Robert H. Smith, Gibson, Ochsner, Adkins, Harlan & Hankins, Wayne P. Sturdivant, Underwood, Wilson, Sutton,

Heare & Berry, Gerald G. Bybee, Walter P. Wolfram, Amarillo, for petitioners.

Garner, Boulter & Jesko, Beau Boulter, Lubbock, for respondent.

DANIEL, Justice.

The controversy here is between Allstate Insurance Company, which issued an automobile insurance policy to J. B. Rhodes, and Fidelity and Casualty Company, which issued a policy to John Snyder, as to which insurer was obligated to defend Robert Snyder (minor son of John Snyder) and pay damages arising out of the collision of an automobile in the possession of and used by Darla Rhodes (minor daughter of J. B. Rhodes) while being driven by Robert Snyder with Darla Rhodes as a passenger.

Allstate Insurance Company brought this declaratory judgment action seeking an affirmative determination that it has no obligation under its policy. Fidelity contends that Allstate has primary coverage and that Fidelity's liability is limited to excess coverage under John Snyder's policy. The trial court withdrew the case from the jury and granted judgment against Allstate. The Court of Civil Appeals reversed and remanded. 470 S.W.2d 282. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

On June 1, 1968, J. B. Rhodes purchased a 1962 Mercury automobile and delivered it to his daughter Darla Rhodes, a minor, who did not live in the same household with her father. Both the legal and equitable title to the car are disputed by the parties, but it is undisputed that J. B. Rhodes purchased an automobile liability insurance policy from Allstate Insurance Company and that the 1962 Mercury was specifically described in the policy and a premium was paid for that car. On January 18, 1969, Darla Rhodes and Robert Snyder were involved in a collision while Snyder was driving the automobile at Darla's request. Both suffered personal injuries, as did the occupants of the other car, who have suits pending against Robert Snyder for damages to person and property as a result of the collision.

Robert Snyder and his father, John Snyder, and Darla Rhodes and her father, J. B. Rhodes, have requested Allstate to defend Robert Snyder up to the limits of the Allstate policy against any suits arising out of the collision.

Allstate's declaratory judgment action is against the Snyders, Rhodes, all claimants in other litigation against Robert Snyder, and Fidelity and Casualty Company of New York, automobile liability insurance carrier for Robert's father. It seeks a judgment decreeing that Allstate has no obligation to defend Robert Snyder or pay any claim against him arising out of the collision in question, or in the alternative, that both Allstate and Fidelity are obligated to Darla Rhodes and Robert Snyder "pro rata—in keeping with their policy limits." In addition to their answer, Robert Snyder and his parents filed a cross-action for medical expenses and services up to the limits of the Allstate policy incurred by them as a result of the collision.

■ Both policies have "other insurance" clauses which state that the policy provides only excess insurance with respect to non-owned automobiles, but provide for prorated coverage with respect to the owned automobile. If the 1962 Mercury was an "owned automobile" within the meaning of the Allstate policy, then Allstate's coverage is primary and Fidelity "non-owned" coverage is excess within the meaning of both policies. Great American Indemnity Co. v. McMenamin, 134 S.W.2d 734 (Tex.Civ.App.1940, error dism'd, judgmt. cor.); United Services Auto Assn. v. Russom, 241 F.2d 296 (5th Cir. 1957); Allstate Ins. Co. v. Universal Underwriters Ins. Co., 439 S.W.2d 385 (Tex.Civ.App. 1969, n. w. h.); Canal Ins. Co. v. Gensco, Inc., 404 S.W.2d 908 (Tex.Civ.App.1966, n. w. h.); 8 Appleman Insurance Law and Practice § 4914.

Withdrawing the case from the jury at the close of evidence, the trial court entered judgment that Allstate has an obligation to defend Robert Snyder, J. B. Rhodes, and Darla Rhodes in all actions and to pay all claims up to its policy limits arising out of the collision, and further decreed that Robert Snyder and his parents recover medical expenses and services incurred by them as a result of the collision up to the limits of the Allstate policy, plus attorneys' fees, penalty, and interest from the date of judgment.

In reversing and remanding to the trial court, the Court of Civil Appeals interprets the Allstate policy as requiring that the legal or equitable title of the "owned automobile" described in the Allstate policy be in the named insured, J. B. Rhodes, and held that the evidence presented a disputed question of fact as to such ownership. As stated by the Court of Civil Appeals, there was a dispute as to whether the delivery of the car by J. B. Rhodes to his daughter, Darla, for her use constituted a gift and passage of legal or equitable title. This fact issue is immaterial, since we hold that the provisions of the Allstate policy do not require that the named insured (J. B. Rhodes) be the owner of the vehicle.

By its policy of liability insurance, Allstate contracted with J. B. Rhodes, the named insured, to pay all sums he should become legally obligated to pay as damages because of bodily injury or property damage "arising out of the ownership, maintenance or use of the owned automobile." The policy defines "insureds," with respect to the owned automobile, as:

"(1) the named insured and any resident of the same household

"(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

"(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a) (1) or (2) above."

"Owned automobile" is defined in the policy as:

"(a) a private passenger, a farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded, . . ."

It is undisputed that a specific premium charge was paid on the specific automobile in question; therefore, the automobile was an "owned automobile." Allstate argues that in addition to the definition of "owned automobile" the policy requires that actual ownership of the automobile be in the named insured. The policy does not so provide, and we find no rule of law which would compel us to add such requirement.

■ Even if the automobile were not owned by J. B. Rhodes that does not necessarily mean that he would be precluded from purchasing and being covered by an automobile liability policy and being the named insured. See 1 ALR 3rd 1193; 7 Am.Jur.2d 307; 7 Appleman, Insurance Law and Practice 264 (1962); 7 Blashfield, Automobile Law & Practice 164 (3rd ed. 1966). It is true that several cases interpreting Texas law have recognized ownership as a requirement of coverage, but they involved policies which expressly provided that the named insured be the owner of the "owned automobile."[1] All of these cases dealt with policies issued prior to the

1. Viator v. American General Insurance Company, 411 S.W.2d 762 (Tex.Civ.App. 1967, n. r. e.); Cimarron Insurance Co. v. Price, 409 S.W.2d 601 (Tex.Civ.App. 1966, n. r. e.); Traders & General Insurance Company v. Lucas, 281 S.W.2d 188 (Tex.Civ.App.1955, n. r. e.). Davis v. St. Paul-Mercury Indemnity Company, 294 F.2d 641 (4th Cir. 1961); Churchman v. Ingram, 56 So.2d 297 (La.App. 1951).

change in policy provisions prescribed by the Texas Insurance Commission in 1963, which omitted all previous requirements of actual ownership from the definition of "owned automobile" and substituted therefor the above quoted new definition contained in the present policy.

In New York Fire & Marine Underwriters, Inc. v. Fleming, 276 F.Supp. 479 (E. D.Texas 1967), the Court recognized that the requirement of ownership of the automobile by the named insured had not been considered by the Supreme Court of Texas since the ownership requirement was deleted from the standard policy and held under the "Erie" doctrine that if the named insured might incur some liability due to the operation or use of the automobile, the policy is effective even though he may not actually own the "owned automobile." Allstate argues that "owned automobile" necessarily implies that it must be owned by the insured. This would be a reasonable inference if it were not for the definition which provides to the contrary.

Mr. Rhodes testified that he gave Darla the car for her general use and "left it up to her for her own judgment" as to how she used the car, warning not to let "every Tom, Dick and Harry" use it. Darla testified that she asked Robert to drive her from Stratford to Fritch because she did not have a jack in her car and did not want to drive alone in the dark. Allstate did not dispute these facts but relied on them here and in the Court of Civil Appeals in making its argument that Mr. Rhodes had no authority to give this permission as the named insured because he did not own the automobile.

Several cases interpreting Texas law have dealt with scope of permission by the insured to permittees and their authority to allow a third person to operate the owned automobile. Indiana Lumbermen's Mutual Insurance Co. v. Hartford Accident and Indemnity Co., 454 S.W.2d 781 (Tex.Civ. App.—Waco 1970, n. w. h.); Phoenix Insurance Co. v. Allstate Insurance Co., 412 S.W.2d 331 (Tex.Civ.App.1967, n. w. h.); Davis v. St. Paul-Mercury Indemnity Co., 294 F.2d 641 (4th Cir. 1961); St. Paul Fire and Marine Insurance Co. v. Dean, 308 F.Supp. 1378 (W.D.Ark.1970). They recognize that two fact questions are presented: (1) authority for the permittee (Darla) to allow a third person (Robert) to drive or use the car, and (2) the original permittee's consent to such use by a third person. As indicated above, these facts were undisputed in the present case.

The medical payment coverage in the Allstate policy contains the same definition of "owned automobile", and the coverage extends "to or for the named insured . . . or any other person who sustains bodily injury, caused by accident, while occupying the owned automobile, while being used by the named insured . . . or by any other person with the permission of the named insured . . . . " Clearly, this coverage was as broad as the liability coverage. Robert Snyder was a person occupying the "owned automobile" while it was being used by Darla Rhodes with the permission of her father, the named insured.

Since the fact of ownership is not a material question in this case, we reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

## ON MOTION FOR REHEARING

■ Allstate urges in its motion for rehearing that neither Darla Rhodes nor Robert Snyder could be driving with the permission of the named insured, J. B. Rhodes, because Mr. Rhodes had no power to grant or refuse permission to drive the car since it was not established that he was the owner. Authorities cited by Allstate supporting this argument involved situations in which the non-owner named insured had no control over the use of the insured auto-

mobile.[1] In this case, it is undisputed that the named insured parent retained the certificate of title in his name and that he gave permission of use to his minor daughter. The parent-child relationship here governed how Darla used the car, since it is undisputed that both Darla and J. B. Rhodes recognized that Darla's use was subject to the instructions given her by her father.[2] Since this control existed, J. B. Rhodes could give permission to Darla and impliedly to Robert Snyder within the terms of the Allstate policy.

Motion for Rehearing is overruled.

1.  United States Cas. Co. v. Ohio Cas. Ins. Co., 208 F.2d 451 (5th Cir. 1953); Didlake v. Standard Ins. Co., 195 F.2d 247 (10th Cir. 1952). In Mason v. Allstate Insurance Co., 12 A.D.2d 138, 209 N.Y.S. 2d 104 (1960), neither the father nor the child held title to the car. See also 4 A.L.R.3d 10 § 3[a], 7 Blashfield, Automobile Law and Practice 599 (3rd ed. 1966).

2.  See Osborne v. Security Ins. Co., 155 Cal.App.2d 201, 318 P.2d 94 (1957).