Lorna Faye STAGG, a minor, et al.,
Appellants,

v.

The TRAVELERS INSURANCE COMPANY
et al., Appellee.

No. 7375.

Court of Civil Appeals of Texas,
Beaumont.

Oct. 19, 1972.

■■■■■■■■■■■■

———◆———

Helm, Jones & Pletcher, Houston, Hopkins & Alworth, Conroe, for appellants.

Vinson, Elkins, Searls, Connally & Smith, Louis E. McCarter, Lueders, Houston, for appellees.

KEITH, Justice.

Plaintiffs brought suit upon the uninsured motorist endorsement attached to garage liability policy issued by defendant to "Gilbert Stagg DBA Stagg Auto Body & Sales." This policy did not specifically describe any particular vehicle but in the "Uninsured Motorists Insurance Coverage Part" attached to the policy appeared, printed and typewritten words reading as follows:

"Description of Insured Highway Vehicles (Check appropriate box)

"☒ Any automobile owned by the named insured BASED ON ONE OWNED AUTO"

The last words in this quotation, appearing in capital letters, were typed upon the face of the endorsement; the others were printed.

Dean Stagg, a son of Gilbert Stagg, was driving a 1968 Plymouth automobile when it was involved in a collision with the uninsured motorist. Arthur Stagg and Lorna Faye Stagg, brother and sister of Dean Stagg and children of Gilbert Stagg, were passenger in the Plymouth and sustained injuries in the collision. The jury convicted the uninsured motorist of negligence proximately causing the collision, exonerated the plaintiff-driver, and found substantial damages for each of the three children who were in the vehicle. Since we have no question as to the negligence of the uninsured motorist, lack of contributory negligence, or complaint of the amount of damages, we pretermit further discussion of the factual basis of the accident.

The defendant insurer specially pleaded that the Plymouth in which plaintiffs were riding was not the "ONE OWNED AUTO" mentioned in the uninsured motorist rider attached to the policy issued to Gilbert Stagg, but was an automobile owned by the plaintiff Arthur Stagg. We quote in the margin an additional exclusion using the language of defendant's pleadings.[1]

The jury answered "We do not" to Special Issue No. 7 inquiring if Gilbert Stagg (the father) owned the 1968 Plymouth. The Stagg family kept two automobiles at their home where all of the plaintiffs resided at the time of the collision. One of these was a 1966 Pontiac and the other was the 1968 Plymouth involved in the collision. It is undisputed that record title to the Plymouth was in Arthur Stagg while the record title to the Pontiac was in Gilbert Stagg, the father. Travelers issued a separate insurance policy (which did not include an uninsured motorist rider) on the Pontiac to which the Plymouth was added for collision and comprehensive coverage only. Further, it is undisputed that an uninsured motorist premium was paid for only one automobile and that was the one insured under the garage liability policy.

---

1. "[C]overage is further excluded by the following language of the policy:
   " 'This insurance does not apply:
   " '(b) to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, or through being struck by such a vehicle, but this exclusion does not apply to the named insured or his relatives while occupying or if struck by a highway vehicle owned by a designated insured or his relatives;'
   "This exclusion is applicable in this case since the automobile in question was not the insured highway vehicle nor was it owned by a designated insured or his relatives since there was no designatated [sic] insured in the policy."

Plaintiffs testified that both automobiles were used in the family garage business where Arthur worked regularly and the other children worked from time to time.

■ By their first point, plaintiffs contend that the trial court erred in failing to enter judgment on the jury verdict, or in the alternative, judgment non obstante veredicto, because "the exclusion relied upon by Appellee does not apply since the 1968 Plymouth automobile was an insured vehicle within the meaning of the exclusion." We disagree.

First, we note that in Sherman v. Provident American Insurance Company, 421 S.W.2d 652, 654 (Tex.1967), the Court said that "the burden of proof was on the plaintiffs to negative the exclusions and limitations contained in the policy and pleaded as a defense by defendant's answer." See also, Travelers Indemnity Co. v. McKillip, 469 S.W.2d 160, 162 (Tex. 1971).

In this suit the plaintiffs were seeking recovery under the uninsured motorists rider attached to a garage liability policy. This rider was issued to Gilbert Stagg as the "designated insured" who was described as an "individual";[2] and, the policy coverage was limited to "ONE OWNED AUTO." Unquestionably, Gilbert Stagg owned the Pontiac. If plaintiffs were to prevail, it was incumbent upon them to establish that Gilbert Stagg owned the Plymouth automobile.

We are not called upon to determine whether or not Gilbert Stagg or his son, Arthur, owned the Plymouth. It is sufficient to say that plaintiffs labored under the burden of proving Gilbert's ownership and failed to discharge that burden. Cf. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.1966).

The Stagg plaintiffs were all interested witnesses, and the rule governing such testimony is that set out in Gevinson v. Manhattan Construction Co. of Okl., 449 S.W.2d 458, 467 (Tex.1969): "The general rule is that evidence given by an interested witness, even though uncontradicted, presents an issue to be determined by the trier of fact." The question of ownership of the vehicle in Gilbert Stagg was a proper issue for the jury's determination in this cause.

Nor was it error for the trial court to overrule plaintiffs' motion for judgment non obstante veredicto. The rule is set out in Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 199 (1952):

"[T]o sustain the action of the trial court in granting judgment non obstante veredicto, it must be determined that there is no evidence having probative force upon which the jury could have made the findings relied upon."

See also, Eubanks v. Winn, 420 S.W.2d 698, 701 (Tex.1967); Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 550 (1962).

After all, the jury had before it the certificate of title wherein the son, Arthur, represented to the state officials that he was the sole owner of the Plymouth and thereby obtained his certificate of title and registration plates. Point one is overruled.

Next, plaintiffs contend that they were not required to establish actual ownership of the Plymouth in Gilbert Stagg in order to support a recovery under the uninsured motorist clause. As a factual basis for this contention, plaintiffs point to the record of ownership of the Plymouth heretofore summarized, the record showing that the Plymouth was used by Arthur (and others of the family) in connection with the garage business, and to the local recording agent's testimony concerning his

---

2. In discussing the definition "designated insured" in the UM coverage, the author in Pretzel, Uninsured Motorists, § 19.2, pp. 34, 35 (Allen Smith Co., 1972), says:

"Note that the definition of a designated insured is limited to an individual and not a firm, partnership, or corporation."

knowledge of the business of Gilbert Stagg. Their elaborate argument under this point is supported by a single citation to the very recent opinion of Snyder v. Allstate Insurance Company, 485 S.W.2d 769 (Tex.1972) [not yet reported except in 15 Tex.Sup.Ct.Jrl. 390 (June 28, 1972)].

We do not consider the well-reasoned opinion of Justice Daniel in *Snyder* to be in point in the case at bar. First, as was pointed out by Justice Daniel, the fact that J. B. Rhodes did not own the vehicle involved did not preclude him "from purchasing and being covered by an automobile liability policy and being named insured." Next, we note that it was the primary liability insuring agreement (along with the medical payments clause) which was involved in *Snyder*. The definition of the "insured" in the liability and medical payments clauses is entirely different from that which is found in the uninsured motorist clause.

After quoting the definitions found in the liability provisions of the Allstate policy, Justice Daniel says: "Allstate argues that 'owned automobile' necessarily implies that it must be owned by the insured. This would be a reasonable inference if it were not for the definition [in the policy] which provides to the contrary." [3] There is, of course, no definition in the policy under consideration providing to the contrary; instead, we find an express provision requiring that an automobile must be owned by the named insured before it is an "insured highway vehicle." Further, Gilbert Stagg owned the Pontiac which was used in his business and procured the uninsured motorists insurance only on one vehicle. Cf. American Liberty Insurance Company v. Ranzau, 481 S.W.2d 793 (Tex.1972).

"Gilbert Stagg DBA Stagg Auto Body & Sales," the owner of a Pontiac automobile used in his business, paid a single four dollar premium and secured an uninsured motorists rider upon his policy. He alleged, but failed to prove, that he owned the Plymouth involved in our suit. Having failed to establish his right to proceed under the policy sued upon, the trial court properly entered judgment for the defendant. Plaintiffs' point two is overruled.

■ Finally, the plaintiffs contend that the trial court erred in entering judgment for the defendant insurance company "because the exclusion [relied upon by defendant] is void as an improper restriction on coverage." Plaintiffs readily admit that "[t]here are no Texas cases that hold whether or not this particular exclusion is enforceable." Several out-of-state cases are cited and have been examined by us.[4]

We are also familiar with the rule laid down in *Ranzau*, supra, that the statute governing the uninsured motorist protection "provides that its requirements are to be accomplished 'under provisions prescribed by the Board.' But the Board may not act contrary to but only consistent with, and in furtherance of, the expressed statutory purposes; and if the 'other insurance' clause contravenes the statute, its prescription or approval by the Board is ineffective." (481 S.W.2d at 796.)

The reply of the defendant insurer completely answers the contentions now brought forward by plaintiffs and is adopted, to a large extent, without the benefit of quotation.

Although there have been no Texas decisions passing on the validity of the exclusion in question, those jurisdictions that have actually passed on the particular pro-

---

3. All bracketed material and emphasis herein has been supplied unless otherwise indicated.

4. The authorities cited by plaintiffs are: Motorists Mut. Ins. Co. v. Bittler, 14 Ohio Misc. 23, 235 N.E.2d 745 (Common Pleas Court, Ohio, 1968) ; Travelers Indemnity Company v. Powell, 206 So.2d 244 (Fla.App., 1968) ; National Service Fire Insurance Company v. Mikell, 204 So.2d 343 (Fla.App., 1967) ; and Lopez v. State Farm Fire and Casualty Company, 250 Cal.App.2d 210, 58 Cal.Rptr. 243 (Cal.App., 1967).

vision have held it to be clear and unambiguous with the valid purpose of requiring the named insured to secure additional uninsured motorists coverage for himself and his relatives for any vehicles owned by relative residents of the same household.

United States Fidelity & Guaranty Company v. Webb, 191 So.2d 869 (Fla.App. 1966), involved the interpretation of almost the identical exclusion:

" 'This endorsement does not apply:

" '(b) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by a Named Insured or any relative resident in the same household, or through being struck by such an automobile.' "

In answer to the contention made in the *Webb* case that the clause was ambiguous and invalid, the court said:

"We cannot agree. We find that the purpose of the exception to the exclusion was to provide additional uninsured automobile coverage to Webb and his relatives while occupying or if struck by an automobile owned by a person named in the schedule. Had Webb desired to do so, he could have secured this additional coverage for himself and his relatives on his own uninsured vehicle or on an uninsured vehicle owned by one of his relatives who resided in the same household." (191 So.2d at p. 870)

Another case nearly in point is Spencer v. Traders & General Insurance Company, 171 So.2d 723 (La.App.1965), where the plaintiff was occupying an automobile owned by the brother of the named insured who resided in the same household as the named insured. The policy exclusion was as follows:

" 'EXCLUSIONS This policy does not apply under Part IV:

" '(a) to bodily injury to an insured *while occupying an automobile (other*

*than an insured automobile) owned by the named insured or a relative,* or through being struck by such an automobile.' " (Emphasis by the court.)

The policy then went on to state that an insured automobile did not include:

" '(1) *any automobile or trailer owned by a resident of the same household as the named insured.'* " (Emphasis again by the court.)

The above quoted policy provisions in the *Spencer* case seek to accomplish the same purpose as the exclusion in the case at bar, to-wit—to exclude coverage when an insured is occupying a vehicle (other than an insured vehicle) owned by a relative resident of the same household. The court upheld the provision by holding that the plaintiff was excluded from coverage since the automobile in which she was riding was not an " 'insured automobile.' " The court stated at page 726 of the opinion, "In our opinion the provisions of the policy are clear and unambiguous to that effect."

Still another uninsured motorist case in support of the validity of the exclusion in the case at bar is Smitke v. Travelers Indemnity Company, 264 Minn. 212, 118 N. W.2d 217 (1962). Although the *Smitke* case, supra, did not involve the exact exclusionary language as the instant case, the principle and purpose are the same. In *Smitke*, the plaintiff was a relative resident of the same household as his father, but he also owned his own automobile. The policy provided that the named insured (the father) and any relative were insureds under the uninsured motorist coverage, and then defined relative as meaning, " 'a relative of the named insured who is a resident of the same household, provided neither he nor his spouse owns a private passenger automobile.' "

Plaintiff contended that the provisions of the policy were ambiguous, unreasonable

and capricious. The court denied coverage and held that the provisions were not ambiguous, unreasonable and capricious and stated at page 219 of the opinion:

"Rather, the purpose of the exclusion is to require any resident relative who owns an automobile to obtain this coverage as a part of the policy of his own."

Not one of the cases cited in footnote 3, supra, is applicable to the case at bar. Travelers Indemnity Company v. Powell, 206 So.2d 244 (Fla.App.1968), involved a situation where both the husband and wife had two separate insurance policies on each of their cars, both of which included uninsured motorist coverage. Both were injured in a collision while riding in the husband's car. The court held that after the husband's uninsured motorists limits had been exhausted, they could then recover from the wife's insurer those damages which exceeded the coverage on the husband's car. The clear thrust of the opinion was that since both the husband and wife had uninsured motorist coverage on each of their vehicles, the court would allow what is called "stacking" of the two policies. But, cf. *Ranzau,* supra (481 S. W.2d at p. 797).

Since the *Powell* court was the same court that decided the *Webb* case, supra, the court discussed *Webb* and distinguished it on the basis that the insured in *Webb* owned two cars, one that was insured and one that was not. This is precisely the situation in the case at bar, since the 1968 Plymouth in question was insured under a completely different policy than the garage policy upon which the instant suit was brought. That policy did not contain uninsured motorists coverage.

The *Powell* court, in reaffirming their holding in the *Webb* case, said:

"However, we adhere to the Webb decision, it being our view, at that time and today, that it was not the intent of Section 627.0851, Florida Statutes, F.S.A., to allow a member of a family to purchase one liability policy and claim total coverage thereunder for the entire family while vastly increasing the risk to his insurer by knowingly owning and operating a fleet of uninsured vehicles upon the highways." (206 So.2d at p. 247)

National Service Fire Insurance Company v. Mikell, 204 So.2d 343 (Fla.App.1967), relied on by plaintiffs, is not in point primarily because it did not involve the exclusionary language involved here because the only issue in that case was whether the decedent was injured while engaged in the " 'maintenance, or use' " of an automobile not covered under the policy. Nor is Motorists Mut. Ins. Co. v. Bittler, 14 Ohio Misc. 23, 235 N.E.2d 745 (1968), applicable, since that case involved the validity of provisions excluding the *named insured* from coverage where the named insured was injured while occupying an automobile furnished for regular use to the named insured.

Lopez v. State Farm Fire and Casualty Company, 250 Cal.App.2d 210, 58 Cal.Rptr. 243 (Cal.App.1967), is not applicable since the definition of the term "insured" in the Lopez uninsured motorist policy conflicted with the California uninsured motorist statute defining the term "insured." There is no language in the Texas statute, Tex. Ins.Code Ann., Art. 5.06–1, V.A.T.S., which prohibits the exclusionary language at issue.

Finding no error in the record, the judgment of the trial court is in all things

Affirmed.