The PHOENIX INSURANCE COMPANY,
Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Appellees.

No. 263.

Court of Civil Appeals of Texas.

Corpus Christi.

Feb. 23, 1967.

V. B. Proctor, of Proctor, Houchins, Anderson, Smith & Null, Victoria, for appellant.

Wm. S. Fly, of Fly, Cory, Moeller & Stevenson, Victoria, for appellees.

## OPINION

GREEN, Chief Justice.

This appeal is from a declaratory judgment defining the respective rights and liabilities of appellant and appellee under their automobile policies with reference to the accident in question. Particularly involved is the "omnibus clause" in appellant's policy, and its application to the fact situation of this case.

The material facts in evidence are undisputed. At all times relevant here, appellant Phoenix Insurance Company was the insurer of a 1964 Model Ford Falcon Club Wagon owned by the named insured Ralph Gilster, Jr. On or about June 25, 1964, Father Wallace J. Stiles, assistant pastor and Youth Director of St. Mary's Church, Victoria, Texas, contacted Gilster for the purpose of borrowing this car on June 27th to return to their homes in Victoria six girls who were attending a Summer School of Catholic Action for Youth in Corpus Christi. Borrowing the car and returning the girls to their homes in Victoria was in line with Father Stiles' duties as Youth Director, a fact which Gilster well knew. He had on a number of other occasions borrowed Gilster's car for out of town trips in connection with such duties. Gilster knew the purpose for which Father Stiles wanted the car, and readily agreed with his request. The distance from Victoria to Corpus Christi and return is a total of 180 miles. Nothing was said between the two as to who would drive the car during the trip, nor had anything been said as to who should drive on any of the other occasions that Gilster had let Father Stiles use the car in his church work. Gilster testified that as a matter of fact, he didn't give the matter (of who would drive) any thought; though he further stated that he considered that Father Stiles would be the one to take the car, use it, and bring it back. The words "use" and "borrow" were the terms used in the conversation between Gilster and Stiles, and no reference was made by either party as to who would actually operate the car.

On June 25th, two days before the trip to Corpus Christi, Father Stiles asked James DeLane to drive on this trip. It was agreed by both of the parties that Gilster had not given express permission for James to drive; but Father Stiles after testifying about the former times he had borrowed Gilster's car for such trips, on which occasions some one other than himself had driven, stated that he believed it all right that DeLane drive. James, 16 years of age, was president of the Church's Catholic Youth Organization (C.Y.O.). He had obtained his drivers' license two years before this, and frequently on these Church trips drove for Father Stiles, who considered him a very good and careful driver. On the morning of June 27th, James went to the Gilster residence, got the car keys from a servant and drove the car to the Rectory where he picked up Father Stiles, and they proceeded to Corpus Christi. They got the six girls and, with James DeLane driving, went back to Victoria. Father Stiles then instructed James to let him off at the Rectory where he had some church duties to perform, and to take the girls to their homes and then to return the car to Gilster's home. While the girls were being delivered to their homes, an accident occurred between the car driven by James and one driven by Sandra Lou Barr and owned by her father. James had not deviated from his route at any time, and at the time of the accident was engaged in carrying out the instructions of Father Stiles, and in execut-

ing the purpose for which the car had been borrowed from Gilster. At a meeting between Gilster, Father Stiles and James DeLane in Gilster's office two or three days after the accident Gilster made no adverse comment on the fact that James was driving at the time of the accident.

Sandra Lou Barr and her father have employed a lawyer, and are asserting claims for damages against James DeLane. The issue to be determined here is whether the evidence sufficiently supports the trial court's findings and conclusions that under the provisions of Gilster's automobile policy with appellant, James DeLane was an "insured" as that term is defined in the omnibus clause. Appellant denies that James was protected as an added insured under its policy.

The pertinent portion of the "omnibus clause" of Texas Standard Automobile Endorsement made a part of appellant's policy covering the Gilster car reads as follows:

"D. With respect to such insurance as is afforded by the policy for Bodily Injury Liability and Property Damage Liability arising out of the ownership, maintenance or use of any automoble, the unqualified word 'insured' also includes:

"1. With respect to an owned automobile, the spouse, and any other person using such automobile with the permission of the named insured or his spouse, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, * * *"

Appellee Allstate Insurance Company had issued an automobile policy covering two family cars belonging to John DeLane, the father of James DeLane, which, in addition to other protection, provided coverage for the operation of a non-owned vehicle by John DeLane or the members of his family provided that the use thereof was with the permission of the owner, or was reasonably believed to be with such permission, and is within the scope of such permission, and which provided further that such coverage as to a non-owned automobile shall be excess insurance over any other valid and collectible insurance. Allstate did not deny its responsibility to James DeLane, but contended that its liability was secondary to that of Phoenix, and should be considered only as excess insurance to the policy limits of the Phoenix policy.

At the request of appellant, the trial court made and filed Findings of Fact and Conclusions of Law, as follows:

## "FINDINGS OF FACT

"1. That Plaintiff, The Phoenix Insurance Company, issued its Policy No. CC53453 covering the vehicle involved in the collision, which said policy was in effect on the date of the accident made the basis of this suit.

"2. That Allstate Insurance Company had issued its Policy of Insurance No. 29847607 covering JOHN DeLane and any members of his household in the driving of the automobile made the subject of the policy of insurance, and any other non-owned automobile which was being driven by John DeLane or his family while such non-owned automobile was being operated with the permission, or reasonably believed to be with the permission of the owner.

"3. That the policy of insurance issued by The Phoenix Insurance Company insured RALPH GILSTER, JR. and any other person operating the insured vehicle with the permission of said Ralph Gilster, Jr.

"4. That JAMES LEE DeLANE was a member of the household of John DeLane.

"5. That Ralph Gilster, J. gave express permission to FATHER WALLACE J. STILES to operate the Gilster vehicle.

"6. That permission to use the vehicle was for the purpose of Father Stiles in

his capacity as Assistant Pastor of SAINT MARY'S CATHOLIC CHURCH to go to Corpus Christi, Texas, and return with some students.

"7. That at the time of the accident in question the automobile was being used for the purpose for which it was borrowed.

"8. That Father Wallace J. Stiles in his capacity as Assistant Pastor had implied permission to delegate another party to drive the vehicle.

"9. That Father Stiles did delegate the driving of the vehicle to James Lee DeLane.

"10. That the loaning of said automobile by Ralph Gilster Jr. was not conditioned upon Father Stiles being the only person to drive said vehicle.

"11. That James Lee DeLane had implied permission to use said automobile.

"12. That Ralph Gilster Jr. should have known that Father Stiles in his capacity as Assistant Pastor would likely delegate someone else to drive the vehicle under his general supervision."

## "CONCLUSIONS OF LAW

"1. I conclude as a matter law, that the policy of insurance issued by The Phoenix Insurance Company is of primary coverage in connection with the accident made the basis of this suit.

"2. The driving of the vehicle by James Lee DeLane was with the implied permission of the owner, Ralph Gilster Jr. and that its operation was within the scope of the use for which it was loaned.

"3. That the policy of insurance issued by Allstate Insurance Company is secondary coverage in connection with the accident made the basis of this suit."

From a judgment declaring the respective rights of the two insurance companies contrary to the contentions of Phoenix, and in accordance with the findings and con-clusions reached by the trial court, Phoenix has appealed. By its fifteen points of error, it raises questions of legal and factual insufficiency of the evidence to support the court's findings Nos. 8, 10, 11, and 12, (Garza v. Alviar, Tex.Sup.Ct., 395 S.W.2d 821) and states that the court erred in each of his conclusions of law.

■ There has been much litigation on the subject of the omnibus clause of an automobile insurance policy. See lengthy annotation in 4 A.L.R.3rd, p. 10 et seq., entitled Omnibus Clause of Automobile Liability Policy As Covering Accidents Caused By Third Person Who Is Using Car With Consent Of Permittee of Named Insured. The basic purpose of this provision is to provide liability coverage for the named insured, his family, and any one using the car with the express or implied permission of the named insured. While the general rule seems to be that the mere permission by the named insured to another to use the insured automobile does not *alone* authorize the permittee to delegate his right of user to a third person so as to entitle the latter to protection under the omnibus clause, it is well settled that the named insured's permission to a second permittee need not be express, but may be implied from the broad nature of the initial permission, or from the conduct of the parties and the attendant facts and circumstances. A factual determination as to the existence of such implied authority is usually necessary. 4 A.L.R. 3rd, supra, § 2, p. 17; § 3(a) pp. 23, et seq., and authorities cited; 7 Appleman, Insurance Law and Practice, Chapter 185, Named and Additional Insureds, § 4365; 7 Am.Jur. 2d § 116, p. 431; United Services Automobile Ass'n v. Zeller, Tex.Civ.App., 135 S.W.2d 161, 164, writ dism.corr.judg.; United Services Automobile Ass'n v. Russom, 5 Cir., 241 F.2d 296, citing with approval the Zeller case, and many other authorities cited in the texts cited above. Implied permission by the named insured if established is as effective to extend the coverage of the omnibus clause as that which is formally conferred. 4 A.L.R.3rd,

§ 3(a), p. 28; United Services Automobile Ass'n v. Russom, supra. While, as shown in these texts, there is considerable lack of agreement in the decisions of the courts of the various jurisdictions construing the omnibus clause and applying it to the fact situations presented, we feel that we should be guided by the rule of implied permission as stated above.

 In our opinion, the trial court was justified by the evidence in finding that Father Stiles had the implied consent of Gilster to permit another to drive the car on this occasion, and that the driving of the car by James DeLane at the time of the accident was within the purview of such implied permission. United Services Automobile Ass'n v. Zeller, Tex.Civ.App., supra. Gilster had on several other instances loaned the car for use by Father Stiles in connection with his work with the Catholic Youth Organization, and had never expressed any limitation or any particular interest as to who should actually drive the car on such occasions. By his very silence the trial court could reasonably assume that, by reason of their past dealings and the circumstances of the case, Gilster had confidence in the good priest's discretion and judgment as to such matter, and realized or should have realized that he might delegate the driving to some other competent person. This court can judicially note that it is not unusual for members and friends of church organizations to loan their cars on special occasions for use by the organization or its leader for out of town trips without designating who shall drive. We bear in mind that the car was loaned for the *use* of Father Stiles in his church and Youth Director capacity, and "use" is the term used in the omnibus clause.

On the question of implied permission, 7 Am.Jur.2d, Automobile Insurance, § 116, p. 431, states:

"It has frequently been stated that, as a general rule, the permission given by the named insured to another to use the named insured's car does not authorize the permittee to allow a third party to use the car, and that if the permittee does allow a second permittee to use the car, such use is not 'with the permission of the named insured' as those words are used in the omnibus clause. *However, the effect of this strict rule has been greatly diluted by reason of the fact that many of the courts recognizing the rule have substantially modified it by stating that in every case where the first permittee permits another to use the insured automobile, a factual determination must be made whether the initial grant of permission was broad enough to include an implied grant to the permittee of authority to give another use of the automobile and thus render the latter an additional insured under the omnibus clause.\* \* \** A rule distenct from the above, though not in conflict with it, is that where permission has been granted for a specific use, the permittee may have implied authority to delegate permission, but that such authority is restricted to granting permission for the same use for which the initial permission was given."

We do *not* hold that Father Stiles had implied authority to select a driver who had no legal drivers' license, or who was intoxicated or otherwise incompetent in law to operate the car, or who was, on the occasion, using the car for his own personal interests as distinguished from the purpose for which the car was loaned. Such a case is not presented here. James DeLane, president of the Catholic Youth Organization, had on prior occasions driven other cars borrowed by Father Stiles for out of town trips in connection with church work, and Father Stiles expressed complete confidence in him and his driving. In fact, the Father testified that he was afraid to drive this particular car and felt safer with some one else driving.

* Emphasis ours.

Findings of Fact Nos. 6 and 7 are based on undisputed evidence, and are not objected to or attacked by appellant. With reference to such findings, and to the second clause of the second Conclusion of Law, we quote as follows from 7 Am.Jur.2d, § 117, p. 435:

"The 'general rule' that a permittee may not allow a third party to 'use' the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee, in using the vehicle, is serving some purpose of the original permittee. The courts generally reason that under such circumstances the second permittee is 'operating' the car for the 'use' of the first permittee and that such 'use' is within the coverage of the omnibus clause. * * *

"As to the second of the situations mentioned above—that is, where the second permittee, in using the automobile, is serving some purpose of the original permittee—the rule generally followed is that the initial permission given by the named insured to the original permittee includes by implication the authority to delegate the operation of the automobile to an agent or servant where the latter operates the car in the interests of the original permittee or for their mutual purposes. * * *" Citing many authorities.

See National Farmers Union Property & Casualty Company v. Lukins, 8th Cir., 329 F.2d 564; Maryland Casualty Company v. Marshbank, 3rd Cir., 226 F.2d 637; Webb v. Grimm, 116 Ohio App. 63, 186 N.E.2d 739; Allstate Insurance Company v. Mathis, 232 Ark. 484, 339 S.W.2d 132; Capece v. Allstate Insurance Company v. State Farm Mutual Automobile Ins. Co., 86 N.J.Super. 462, 207 A.2d 207; Buckelew v. Roy, La. App., 168 So.2d 831; Aetna Life Insurance Company v. Chandler, 89 N.H. 95, 193 A. 233.

The text proceeds to state that while this is the general rule, there are a number of cases holding to the contrary.

We feel that the rule generally followed as stated above in the second situation mentioned is particularly applicable to the facts of this case, and should be followed. During this entire trip, from the time when the car was first picked up by James DeLane to and including the occurrence of the accident, Father Stiles in his capacity as assistant pastor and Youth Director was "using" the car for the purpose for which it had been loaned by the named insured. Although he was not in the car at the time of the accident, it was still being used by him for his benefit and under his express instructions.

By reason of the implied authority in Father Stiles to have another drive the car, and also because at the time of the accident the automobile was being used for the very purpose for which it was borrowed, and was serving a purpose beneficial to the first permittee, we hold that James DeLane was, under the facts of this case, an additional "insured" within the provisions of the omnibus clause of appellant's policy. All of appellant's points of error are overruled.

Appellant cites as supporting its contention that DeLane was not an added insured the case of Globe Indemnity Company v. French, Tex.Civ.App.(1964), 382 S.W.2d 771, writ ref. n. r. e. Three college students were there involved. Rockwell, the named insured, loaned his automobile to McCauley, a friend, to use in attending a dance, knowing that McCauley was double-dating with French. While they were at the dance French, allegedly with McCauley's permission, though this is disputed, used the car to take his date to her dormitory within the time required by dormitory rules. While on the way back to the dance, French was involved in a car accident. Although nothing was said by Rockwell about French driving, there was no express limitation that only McCauley was to drive. The policy in question covered Rockwell as the

named insured, and "any person using such automobile, provided the actual use thereof is with the permission of the named insured." The Court of Civil Appeals, in reversing and rendering the trial court's judgment, held that French was using the car without the express or implied consent of Rockwell, and was not covered by the above quoted provision of the policy.

While we do not take issue with the decision in French, we do believe that it is not applicable or controlling in the fact situation in our case. As stated in the above quotes from 4 A.L.R.3rd and 7 Am.Jur.2d, supra, in each case a factual determination must be made as to whether the initial grant of permission was broad enough, under all of the surrounding facts and circumstances, to include an implied grant to the first permittee to give another authority to operate the automobile. In our case the evidence was that the car was loaned to Father Stiles, not as a private individual on a private mission, but as assistant pastor and Youth Director of his church performing duties as such. It had been loaned to him in such official position under similar circumstances on a number of other occasions. James DeLane was not "using" the car on a private mission of his own. He as president of the C.Y.O. was asked by Father Stiles as Youth Director to drive the car while it was being "used" in connection with the director's duties. Father Stiles was still "using" the car in such duties and for the purpose for which it was borrowed even after he got out of it at the Rectory. Other facts and circumstances which distinguish the fact situation of this case from French have already been set out in this opinion. The trial court's findings were based on the facts and circumstances in evidence, as well as the reasonable and legitimate conclusions to be drawn therefrom, and were supported by sufficient evidence legally and factually.

Since James DeLane was covered as an additional insured under the provisions of the omnibus clause of appellant's policy, the trial court properly concluded that ap-

pellant's insurance policy was primary coverage in the accident in question, and that appellee's policy was secondary coverage.

Judgment affirmed.