The TRAVELERS INDEMNITY COM-
PANY, Appellant,

v.

EMPLOYERS CASUALTY COMPANY,
Appellee.

No. 5092.

Court of Civil Appeals of Texas,
Waco.

Nov. 18, 1971.

Akin, Vial, Hamilton, Koch & Tubb, Robert H. Frost, Dallas, for appellant.

Strasburger, Price, Kelton, Martin & Unis, Rowland Foster, Dallas, for appellee.

OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff Travelers Indemnity Company from summary judgment that it take nothing against defendant Employers Casualty Company.

Travelers had liability coverage on Bill Huens, who while driving an automobile owned by W. E. Hull, injured a third party. Employers had liability coverage on the Hull vehicle. Travelers funded settlement of the third party claim, and filed this suit to recover from Employers the amount of the settlement (plus expense).

The question presented is whether Huens was driving the Hull automobile with permission of the named insured so as to entitle Huens to coverage under the omnibus clause of Employers' policy.

Employers moved for summary judgment based on its policy, and the affidavits of Mr. and Mrs. Hull and their son W. T. Hull.

The trial court rendered summary judgment that plaintiff take nothing.

Plaintiff appeals contending the trial court erred in rendering summary judgment it take nothing because:

1) Factual questions are presented regarding the existence of actual or implied permission of Huens to drive the Hull automobile.

2) Affidavits in support of defendants' motion compel a finding of implied permission of Huens to operate the Hull automobile.

Employers policy insuring the Hull automobile provided liability coverage to:

"1) the named insured and any resident of the same household.

"2) Any other person using such automobile with the permission of the named insured * *".

Mrs. Hull's affidavit states:

"I am the mother of W. T. Hull and wife of W. E. Hull * * I was named insured under Employers * * policy * *.

"On October 27, 1969, I took the automobile to my son's school for him to use in going to a class at Fair Park. I did not give him permission to allow someone other than himself to drive the car on that occasion, nor had I given such permission on any prior occasion.

"Although I never specifically told him not to allow his friends to drive the car, I assumed that he knew better than to let Bill Huens or any of his other young friends drive.

"I certainly did not authorize my son to allow Bill Huens to drive the car on October 27, 1969 * *".

Mr. Hull's affidavit states:

"My name is W. E. Hull * *.

"I am father of W. T. Hull and husband of Evelyn S. Hull. Prior to October 27, 1969, I at no time gave my son permission to allow someone else to drive our 1966 Pontiac. He had only had his driver's license for a short period of time, and I assumed that he knew better than to allow someone else to drive the car. To the best of my knowledge, he had never let anyone else drive the car prior to the date of the accident in which Bill Huens was driving.

"I did not know Bill Huens prior to the accident and certainly did not give him permission to drive the car."

W. T. Hull's affidavit states:

"I am W. T. Hull. I am 18 years of age * *.

"My parents are W. E. Hull and Evelyn S. Hull. On October 27, 1969 I was living with my parents * *. I had a Texas Operator's License which I had received 10 days earlier, on October 17, 1969.

"On October 27, 1969, the date of the accident * * * my mother brought the 1966 Pontiac to school and left it for me to drive to the Museum of Natural History at Fair Park where our Biology class was meeting. After the class at Fair Park was over, Bill Huens and I left in the car.

"Before we got into the car, Bill asked me if he could drive and I told him he could not. Then when we got on the expressway he asked me 2 or 3 times more if he could drive * * and begged me to let him. * * I finally stopped and let him drive.

"Although my parents had never told me specifically that I was not to let someone else drive the car, I knew my parents wouldn't want Bill Huens to drive the car, and that is why I at first said that he couldn't drive. I only allowed him to

drive after he begged me to let him, and I knew that neither my mother or my father would approve.

"October 27, 1969 was the first time I ever let Bill Huens or anyone else drive the car."

The policy provides coverage to the named insured and "any other person using such automobile with the permission of the named insured".

■ The general rule is that permission given by the named insured to another to use the named insured's car does not authorize the permittee to allow a third party to use the car, and if the permittee does allow a second permittee to use the car, such use is not "with the permission of the named insured" as those words are used in the omnibus clause. The initial grant of permission may however be broad enough to include an implied grant to the permittee of authority to give a second permittee use of the automobile, and thus render the latter an additional insured under the omnibus clause.[1]

■ Since Mrs. Hull did not authorize her son to permit Huens to drive; did not want Huens or any of her son's friends to drive, and her son knew this; and the son had never before let another drive; we think the general rules applicable, and that the named insured's permission to the son to drive was not broad enough to include implied permission for the som to let Huens drive, as a matter of law. See: Globe Indem. v. French, CCA, NRE, 382 S.W.2d 771; Phoenix Ins. Co. v. Allstate Ins. Co., CCA, NWH, 412 S.W.2d 331; Indiana Lumbermen's Mut. Ins. Co. v. Hartford Acc. and Indem. Co., CCA, NRE, 454 S.W.2d 781.

Plaintiff's points are overruled.

Affirmed.

---

1. See: 7 Am.Jur.2d p. 431; 4 ALR 3d 1–133, which reflect conflicting lines of authority on this question.