**HARTFORD ACCIDENT AND INDEMNITY CORPORATION, Appellant,**

v.

**Giles LOWERY, Appellee.**

No. 7433.

Court of Civil Appeals of Texas, Beaumont.

Feb. 8, 1973.

Rehearing Denied March 1, 1973.

Wm. Drew Perkins, Lufkin, for appellant.

Bob Flournoy, City Atty., Lufkin, for appellee.

STEPHENSON, Justice.

Giles Lowery brought this action against his liability insurance carrier, Hartford Accident and Indemnity Corporation, to recover money paid by him in defense and settlement of personal injury claims. Trial was before the court and judgment was rendered for plaintiff. The parties will be referred to here as they were in the trial court.

The parties agree on most of the facts in this case. Defendant issued a policy of insurance to plaintiff which insured a 1968 Ford half-ton pickup. That policy of insurance was in force and effect on the date of the accident made the basis of the claims against plaintiff. Defendant was given notice of the accident and denied coverage under the policy. Suit was filed against plaintiff and defendant refused to defend him and again denied coverage under the policy. That case was settled and this suit was brought to recover the amount of the settlement paid by plaintiff plus his attorney's fees.

It is also undisputed that the pickup truck in question was being driven by Reese Miller at the time of the collision. Reese Miller was plaintiff's employee. Herbert Lowery, plaintiff's brother, asked Reese Miller to catch a cow for him that had gotten out of its pasture. Miller attached a gooseneck trailer to the pickup truck and was on the way to catch the cow when the collision occurred. Defendant has denied coverage for two reasons. First, that Reese Miller did not have permission to operate the pickup truck on the occasion of the collision. Secondly, the gooseneck trailer attached to the pickup truck was not designed for use with a private passenger automoble.

The trial court made findings of fact and conclusions of law. Among others, the court found as a fact: That Reese Miller had plaintiff's implied consent to drive the pickup truck. That Herbert Lowery had express and implied consent to drive the pickup and to authorize others to drive the pickup for Herbert Lowery's use and benefit. That Herbert Lowery authorized Reese Miller to drive the pickup truck on the occasion of the collision.

 Defendant has points of error that there is no evidence and insufficient evidence to support these findings of fact and that such findings are contrary to the great weight and preponderance of the evidence. In passing upon the no evidence points, we consider only the evidence favorable to such findings; and in passing upon the remaining points, we consider the entire record.

The policy herein sued upon provides, in substance, under "Definition of Insured" that it includes the named insured, his wife and "any person while using the automobile . . . provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

 The law is well settled in Texas that permission means consent to use the vehicle at the time and place in question and in a manner authorized by the owner, either express or implied. Allstate Insurance Company v. Smith, 471 S.W.2d 620, 624 (Tex.Civ.App., El Paso, 1971, no writ); Phoenix Insurance Co. v. Allstate Insurance Co., 412 S.W.2d 331 (Tex.Civ.App., Corpus Christi, 1967, no writ); United Services Automobile Ass'n v. Zeller, 135 S.W.2d 161 (Tex.Civ.App., San Antonio, 1939, dism. judgm. cor.); and Travelers Indemnity Co. v. Employers Casualty Co., 474 S.W.2d 501 (Tex.Civ.App., Waco, 1971, no writ). In the case before us, in order for Reese Miller to be an additional insured under the omnibus clause of the insurance policy sued upon, Miller had to be driving the car at the time of the collision with Giles Lowery's express or implied consent. If Reese Miller had implied consent, either directly from Giles Lowery or through Herbert Lowery, then Reese Miller was an additional insured under the policy. An excellent discussion of a somewhat similar factual situation is found in Phoenix Insurance Co. v. Allstate Insurance Co., supra, as follows:

"While the general rule seems to be that the mere permission by the named insured to another to use the insured automobile does not *alone* authorize the permittee to delegate his right of user to a third person so as to entitle the latter to protection under the omnibus clause, it is well settled that the named insured's permission to a second permittee need not be express, but may be implied from the broad nature of the initial permission, or from the conduct of the parties and the attendant facts and circumstances. A factual determination as to the existence of such implied authority is usually necessary." (412 S.W.2d at 334, emphasis by the court)

That case quotes from 7 Am.Jur.2d, Automobile Insurance, § 116 as follows:

" 'It has frequently been stated that, as a general rule, the permission given by the named insured to another to use the

named insured's car does not authorize the permittee to allow a third party to use the car, and that if the permittee does allow a second permittee to use the car, such use is not "with the permission of the named insured" as those words are used in the omnibus clause. *However, the effect of this strict rule has been greatly diluted by reason of the fact that many of the courts recognizing the rule have substantially modified it by stating that in every case where the first permittee permits another to use the insured automobile, a factual determination must be made whether the initial grant of permission was broad enough to include an implied grant to the permittee of authority to give another use of the automobile and thus render the latter an additional insured under the omnibus clause.'"* (412 S.W.2d at 335, emphasis by the court)

Also quoted in that opinion is 7 Am.Jur. 2d, Automobile Insurance, § 117 as follows:

" 'The "general rule" that a permittee may not allow a third party to "use" the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee in using the vehicle, is serving some purpose of the original permittee. The courts generally reason that under such circumstances the second permittee is "operating" the car for the "use" of the first permittee and that such "use" is within the coverage of the omnibus clause. * * *

" 'As to the second of the situations mentioned above—that is, where the second permittee, in using the automobile, is serving some purpose of the original permittee—the rule generally followed is that the initial permission given by the named insured to the original permittee includes by implication the authority to delegate the operation of the automobile to an agent or servant where the latter

operates the car in the interest of the original permittee or for their mutual purposes.'" (412 S.W.2d at 336)

Giles Lowery testified: Reese Leonard Miller was his employee and had been working for him for five or six years. It was ordinary routine for Miller to drive the pickup in question in doing work for him. Miller had driven the pickup "I imagine about 10,000" times. Miller ordinarily worked a five-day week. The pickup was kept at Miller's home, at Giles Lowery's home and at the barn. He had not given Miller express orders not to drive it. "Sometimes he might use it in a tight or something." These questions and answers were also part of his testimony:

"Q Well, would you say that he was an employee that had been with you long enough and you knew him well enough and you all were good enough friends to where you would let him borrow your pick-up and trailer if he wanted it, if he had gotten in touch with you about it?

"A A man work for you five years, would you loan him your car if he come there and asked you?

"Q I think I would.

"A I think I would, too."

He and his brother, Herbert Lowery, live next door to each other and had been in the cattle business "you might say" together for twenty-five years. At times he bought cattle for his brother and his brother bought cattle for him. His brother had his permission to use the pickup in question, as well as anything else he owned, any time. "[A]nything I got he uses in the cattle business and anything he has got I use it."

Miller testified: He used the pickup to go to town, to Lowery's house, to the bank, to the auction barn, and to various and sundry other places, "whatever he's got for me." If it pertained to Giles Lowery's business, it was understood he could use the

pickup. He asked Giles Lowery about using it 90% of the time. His wife and children do not ride in the pickup very often. On the day of the collision in question, while on the way to the auction barn, he saw Herbert Lowery in town. Herbert Lowery told him one of his (Herbert's) cows had gotten out of its pasture and he wanted to know if Miller would go get her. He went to the barn and picked up the trailer.

■ In view of all of this evidence, we conclude that only a strained construction could lead to a conclusion that Miller did not have Giles Lowery's permission to drive the insured pickup on the occasion in question. There is no evidence of deviation in the record. Miller was not on a mission of his own, but to catch a cow for Herbert Lowery. It could not be argued that Herbert Lowery did not have permission to drive this pickup. The nature of the permission given to Herbert Lowery by his brother, Giles Lowery, could not be broader. Herbert Lowery had permission to use anything Giles Lowery owned, including this pickup. If Herbert Lowery had been driving at the time of the collision, no question as to permission could have been raised. Yet, coverage was denied in this case, even though the driver of the pickup was Giles Lowery's employee who had driven the pickup "I imagine about 10,-000" times and who kept the pickup at his home part of the time. Another significant, undisputed fact is that the pickup was being used at the time of the collision solely in the interest of Herbert Lowery, who unquestionably had permission to use the pickup. Considering the broad nature of the initial permission and the conduct of Giles Lowery, Herbert Lowery and Miller together with all of the attending facts and circumstances, we find that the evidence supports the findings by the trial court that Miller had the insured's implied consent to drive the pickup on the occasion in question. The no evidence points are overruled.

■ There is evidence in this record which would have supported a finding to the contrary. That evidence did nothing more than raise a question of fact for the trial court to determine, which it did in favor of the plaintiff. The trial court's findings are not clearly wrong or manifestly unjust. The remaining evidentiary points are overruled.

■ This policy provides, in effect, that there is no coverage if the insured vehicle is towing a trailer, unless the trailer being pulled is designed for use with a private passenger automobile. The admitted facts in this case are that the trailer in question is one known as a "gooseneck trailer" which is designed to be attached to the bed of a pickup or other truck. It is also admitted that the gooseneck attachment could not be used with a sedan type automobile. The policy before us does not restrict coverage to a trailer designed for use with all passenger automobiles and we conclude that there is coverage if the trailer is designed for use with any passenger automobile. If the pickup in our case is a private passenger automobile under the terms of the policy, then the exclusion clause has no application.

■ The trial court found this pickup to be a private passenger automobile under the terms of the policy. The definition in the policy includes "a private passenger, station wagon or jeep type automobile." All of the Texas cases construing this definition hold that a pickup is included under the term "jeep type automobile" because of the dual purpose for which a pickup is designed and used. See State Farm Mutual Ins. Co. v. Durrett, 472 S.W.2d 214 (Tex.Civ.App., Fort Worth, 1971, no writ) and Mutual Benefit Health and Accident Ass'n v. Hudman, 385 S.W.2d 509, 514 [Tex.Civ.App., Austin, 1964, reversed on other grounds 398 S.W.2d 110 (Tex.1965)]. We agree with these cases, especially in view of the fact that it is common knowledge that pickup trucks are

generally used today primarily as passenger automobiles. There is evidence to support the finding by the trial court that the pickup was a private passenger automobile under the terms of the policy. It logically follows, therefore, that this gooseneck trailer being designed for use with this private passenger automobile prevents the exclusion clause from having application. The point of error is overruled.

Affirmed.

KEITH, Justice (concurring and dissenting).

I concur in part one of the opinion of the majority that Miller had at least the implied consent of the owner to drive the pickup truck on the occasion in question. However, I have difficulty in following the rationale of the court on the coverage question.

Exclusion (c) of the policy in issue provided:

"This policy does not apply:

\* \* \* \* \* \*

"(c) under coverages A and C, while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company."

Plaintiff sought to recover in this instance under coverages A and C of the policy and I note that while the trailer was owned by the insured, it was not mentioned in the policy and plaintiff made no effort to establish that it was "covered by like insurance in the company."

The policy defined private passenger automobile in this manner:

"The term 'private passenger automobile' means a private passenger, station wagon or jeep type automobile."

Coverage was afforded for "a trailer not described in this policy, if designed for use with a private passenger automobile."

The question presented by this appeal is whether or not a "gooseneck" trailer, not described in the policy and which was not designed for use (and could not be used) with an ordinary private passenger automobile, was likewise within the coverage of the policy.

I do not find a detailed description of a gooseneck trailer in our record. The parties did agree that the "gooseneck trailer could not be attached to a normal, or ordinary, passenger car"; that such a trailer "can not be attached to any motor vehicle unless a special attachment is placed on such motor vehicle specifically designed to accommodate a gooseneck trailer"; and "[a] gooseneck trailer attachment is designed to attach to a pickup truck or other similar truck bed."

I note also that there was no pleading of ambiguity on the part of the insured and no such contention is made on appeal. Instead, the insured, relying upon *Hudman* and *Durrett* cited in the majority opinion, claims coverage while pulling the gooseneck trailer. I find the reasoning of the insured, which has been adopted by the majority, lacking in persuasiveness.

Our Supreme Court has not yet passed directly upon the question of whether a pickup truck is a private passenger automobile. The intermediate court's holding in *Hudman* was not reached by the Supreme Court when it reversed the judgment of the Court of Civil Appeals. [398 S.W.2d 110 (Tex.1965)]; and, the Supreme Court was not given a chance to pass upon the question in *Durrett* since there was no application for a writ of error.

I submit that only by a strained construction of the policy has the majority found

coverage in this instance. Assuming that *Hudman* and *Durrett* have correctly determined that a pickup truck is a private passenger automobile, it does not follow that a gooseneck trailer which can *only* be attached to a truck—and which cannot be attached to a ordinary passenger automobile—is covered.

In plain and unmistakable language, the policy extended coverage to "a trailer . . if designed for use with a private passenger automobile." Conversely, it did not cover a trailer designed for use with a truck. Only by circuitous reasoning can a contrary result be obtained.

Insurance policies must be construed just as other contracts. Republic National Life Insurance Co. v. Spillars, 368 S.W.2d 92, 94; 5 A.L.R.3d 957 (Tex.1963); and, we are reminded that courts cannot undertake to make new contracts for parties in disregard of the plain and unambiguous language used in the policy. Royal Indemnity Company v. Marshall, 388 S.W.2d 176, 181 (Tex.1965).

The holding of the majority must come as a distinct surprise to Reese Miller who thought all the time that he was driving a truck, not a private passenger car. We have called the truck towing a gooseneck trailer a private passenger car; but, as Justice Pope once said: "Putting a saddle on a duck does not make it a horse." [Smith v. Morgan, 235 S.W.2d 938, 942 (Tex.Civ. App., San Antonio, 1950, error dism.)]. Or, as was said earlier, "Calling our granite capitol a kite will not make it fly. 'There is no magic in mere words to change the real into the unreal.'" [San Antonio & A. P. Ry. Co. v. Blair, 108 Tex. 434, 196 S.W. 1153, 1157 (1917)]. I must, therefore, respectfully dissent from an unrealistic creation of coverage in this case.

Being of the opinion that there was no coverage under the policy sued upon, I would reverse the judgment of the trial court and render judgment that the plaintiff take nothing.