GLOBE INDEMNITY COMPANY and United States Fidelity and Guaranty Company, Appellants,

v.

G. C. FRENCH et al., Appellees.

No. 7370.

Court of Civil Appeals of Texas.

Amarillo.

June 15, 1964.

Rehearing Denied Oct. 19, 1964.

Crenshaw, Dupree & Milam, Lubbock, for appellants.

Brock, Wright, Waters & Galey, Lubbock, for appellees.

CHAPMAN, Justice.

Prior to December 8, 1961, a policy of insurance was issued by United States Fidelity And Guaranty Company to Richard Rockwell, as named insured, which contained a provision that the insurance would cover "any person using such automobile, provided the actual use thereof is with the permission of a named insured."

Also prior to said date a family automobile policy of insurance was issued to G. C. French, father of Larry French. That policy provided, with respect to a non-owned automobile, that the insurance would cover "any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof was with the permission of the owner."

Richard Rockwell, Gary McCauley and Larry French were students in Texas Tech in December of 1961. On December 8 that year Richard Rockwell loaned his 1957 Chevrolet automobile to Gary McCauley to take his date to a dance that night. McCauley double-dated with Larry French. While McCauley and his date were dancing later in the evening, French took his date back to her dormitory in the Rockwell automobile in order to get her to her room within the time required by the rules of the dormitory. On the way back from the dormitory to the dance he ran into some parked automobiles, causing damages for which he was later sued. He was also sued by Rockwell for damages to his automobile, which Rockwell claimed he was using without permission.

G. C. French, individually and as next friend of his son, Larry, filed this suit seeking a Declaratory Judgment finding that the coverage of the named insurance policies extended to Larry French under the omnibus clauses therein, on the theory that Larry French was driving the automobile of Richard Rockwell with his implied consent. The trial court rendered judgment to the effect that on the occasion in question Larry French had the implied consent of Richard Rockwell to drive his automobile; and was, therefore, covered by both policies. Appeals are perfected by both insurance companies from such judgment, which appeals contend there is no evidence to support the finding that French had the implied consent of Rockwell. All parties admit he did not have his express consent. There appears to be no Texas authority directly in point on the questions raised by the facts of this case.

Gary McCauley and Richard Rockwell were close friends, having known each other for fourteen years and having been in the same classes in school in Weatherford. McCauley did not have an automobile at school and Rockwell had loaned him his on several occasions prior to the one under consideration. French and McCauley lived just across the hall in the same dormitory. Rockwell lived in another dormitory on the campus. French testified he met Rockwell about six weeks before the accident. Rockwell testified he did not remember ever meeting French until Tuesday before the accident, though he knew when he loaned McCauley his car on December 8 that French was going to double-date with him. He did not even know if French had a

driver's license, there was not anything said about French driving the car and he did not know he was going to drive it. When asked on cross examination if he had ever made any restrictions on McCauley to the effect that he was the only one to drive the car when he loaned it to him, he testified: "I've never told him that, but I figured he understood that since I had loaned him the car."

He also testified he knew McCauley drank some and had driven when he was drinking. He was then asked if he did not know that McCauley might get himself in shape that someone else might have to drive the car. He replied: "No sir."

McCauley testified that when they reached the dance he was driving and French and his date were in the back seat. He said he never had given him permission to drive the car. That fact was disputed by French. It is without dispute that French was not present when McCauley made arrangements for using Rockwell's car and that nothing was said either way with respect to the driving being limited to McCauley. French was with McCauley when he secured the keys from the owner and Rockwell handed them to McCauley.

Since this is a first impression case in Texas, we must look to the textual statements by recognized authorities and to decisions of other jurisdictions. In reading decisions from other states we find considerable lack of agreement. For example, in Appleman, Insurance Law and Practice, Vol. 7, Sec. 4366, page 308, the writer, after suggesting in effect that some states apparently feel that an automobile liability insurance contract is as much for the benefit of the public as for the named or additional insured, then states:

"These states have arbitrarily adopted a doctrine that if the vehicle was originally entrusted by the named insured, or one having proper authority to give permission, to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated."

Though not in point on our particular question, a case involving an employer-employee relationship in the use by the employee of a company truck, where he deviated from the scope of his permission, the San Antonio Court of Civil Appeals has suggested that Texas takes a stand between the strict and liberal rules on extended coverage. Olgin v. Employers Mut. Casualty Co., Tex.Civ.App. 1950, 228 S.W.2d 552. Though we believe it cannot be determined what position Texas will take under a situation such as we have until our Supreme Court writes on the question or stamps a "writ refused" on the opinion of some intermediate appellate court, we feel confident that our Supreme Court will not take the "hell or high water" position mentioned in Appleman, supra.

In a case involving a situation very similar to our own the United States District Court of New Hampshire has held the insurance coverage did not apply to Summers, a Dartmouth College student, who took the car of his friend, Melville Straus, without his permission, even though Straus testified that if Summers had asked for permission to use it, he would probably have granted it and even though the record showed a general custom at Dartmouth whereby students loaned their cars to one another. Fireman's Fund Insurance Company v. Brandt, D.C., 217 F.Supp. 893.

Where an employee driver was the guest in the home of his employer and had a collision while driving his employer's small truck without his expressed consent, an intermediate appellate court of Kentucky said:

"  *  *  *  there can be no implied permission by reason of the relationship where an employee or guest or other person occupying a similar association

takes the car and uses it for the first time." United States Fidelity & Guaranty Co. v. Brann, 297 Ky. 381, 180 S.W.2d 102.

The United States District Court of North Dakota, Southwestern Division, in Sunshine Mutual Insurance Co. v. Mai, 169 F.Supp. 702 has held:

"In order to support an inference that one had the implied permission to use the assured's automobile for his own pleasure and purposes, there must be evidence tending to show a course of conduct or practice known to the owner and acquiesced in by him or by someone having authority to give permission."

In Main v. Cameron, 13 Wis.2d 15, 108 N.W.2d 142, the Supreme Court of Wisconsin, in a case involving college students and a former student who were good friends, held against the theory of implied consent because "there were no circumstances or conduct occurring before Cameron took the car [Main's car] from which permission could be implied."

The text writer in Appleman, Insurance Law and Practice, Vol. 7, Sec. 4365 at page 303 states:

"An implied permission * * * is not confined to affirmative action, but means an inferential permission, in which a presumption is raised from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent. It has also been stated, however, that the term 'permission' contemplates something more than mere sufferance or tolerance without taking steps to prevent, and the term is used in the sense of leave, license or authority with the power to prevent. *"Such implied permission is usually shown by usage and practice of the parties over a period of time preceding the day upon which the insured automobile was being used * *"* (Italics added).

Appellee argues in effect that since Rockwell knew French was double-dating with McCauley, it is only realistic to assume that he had the implied permission to drive the vehicle on the occasion in question. By the process of such reasoning we would then have to extend the implied consent to the girls involved in the dates regardless of the owner's knowledge of their driving abilities or even of their possession of a driver's license.

Rockwell testified he did not even know if French had a driver's license. He did not remember having even met French before Tuesday preceding the Friday dance. They could not have been called friends from the record here made and were not fraternity brothers. There had been no course of conduct or relationship between them to indicate mutual acquiescence and no usage or practice of the parties over a period of time preceding the day upon which the insured automobile was being used. Therefore, to affirm the judgment of the lower court we would in effect be holding that when a college student loans his car to a friend of long standing all other students riding in the car have his implied permission to drive it regardless of his knowledge of their habits or regardless of his previous relationship with them. This court is not willing to extend the doctrine of implied consent that far until higher authority requires us to do so.

There is no indication that the evidence upon another trial would be any different. Accordingly, we hold that Larry French was not within the coverage of either of the named policies of insurance, since he was driving the automobile in question without permission, express or implied, of the owner of the automobile.

The judgment of the trial court is reversed and rendered.