**UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellant,**

v.

**Debra C. STEVENS et al., Appellees.**

**No. 9075.**

Court of Civil Appeals of Texas, Amarillo.

March 19, 1980.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellant.

A. W. Salyars, Lubbock, for appellee Michele Denise Neagle.

DODSON, Justice.

In this declaratory judgment action, the appellant, United Services Automobile Association, an insurance carrier, seeks to preclude coverage under the omnibus clause of a family automobile insurance policy issued to its named insured. The appellee, Michele Denise Neagle, received personal injuries when she was struck by the named insured's vehicle. She maintains that at the time of the accident, Debra C. Stevens and Debra's father, William A. Stevens, were using the vehicle as prospective purchasers with the implied consent of the named insured. The appellant maintains that the evidence is legally and factually insufficient to support the trial court's expressed finding that William and Debra Stevens were using the vehicle with the implied consent of the named insured. The appellant further contends, *inter alia*, that the vehicle was being operated exclusively by Debra Stevens, an unlicensed driver, and that any implied consent for Mr. Stevens to use the vehicle was non-delegable to Debra.

The appellant brought the action against Debra C. Stevens, William A. Stevens, Leroy "Cotton" Crump, T & G Trucks, Michele Denise Neagle and the United States of America.[1] After a bench trial the court rendered judgment adverse to the insurance carrier. The appeal is from this adverse judgment. We affirm.

The trial court made findings of fact and conclusions of law. The unchallenged findings of fact establish, *inter alia*, that on 10 February 1977, Michele Denise Neagle was struck by a 1971 Gremlin automobile on a public street in Lubbock, Texas. As a result of the accident, Michele sustained personal injuries. At the time of the collision, the automobile, owned by Glen J. Thomas, was being used by Debra C. Stevens and her father William A. Stevens as prospective purchasers of the vehicle and was insured by the appellant. The omnibus clause of the insurance policy issued by the appellant to Mr. Thomas provides in part:

A. *Persons Insured* : The following are insureds under Part I:

(a)(2) any other person *using* such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his

---

[1] The real parties in interest on this appeal are United Services Automobile Association, the insurance carrier, and Michele Denise Neagle, a defendant in this instance but a plaintiff in a companion liability case. The claims by and against the United States have been dismissed and the other claims against the remaining defendants are merged into this declaratory judgment action.

other actual use thereof is within the scope of such permission . . . . (emphasis added).

■ The appellant maintains that the evidence is legally and factually insufficient to support the trial court's expressed finding that William Stevens and Debra Stevens were using the vehicle with the implied consent of Mr. Thomas, the named insured. In determining the legal insufficiency challenge we can consider only the evidence and inferences tending to support the finding and we must disregard all evidence and inferences to the contrary. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263, 265 (Tex.1974). We must consider all the evidence in deciding the factual insufficiency attack. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951).

■ Permissive use under an omnibus clause may be either by expressed or implied consent from the named insured, and implied consent from the named insured may be established by and inferred from the surrounding circumstances including lack of objection. *Royal Indemnity Co. v. H. E. Abbott & Sons, Inc.*, 399 S.W.2d 343, 345 (Tex.1966); *Hartford Accident and Indemnity Corp. v. Lowery*, 490 S.W.2d 935, 937 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.). The evidence shows, *inter alia*, that Mr. Thomas went to T & G Trucks to purchase a fifth wheel trailer. He wanted to trade in his 1971 Gremlin, but T & G did not take cars in trade for trailers. Previously, Mr. Crump, the trailer sales manager for T & G Trucks, had sold a vehicle for Mr. Thomas from T & G Trucks' lot and received a commission from Mr. Thomas. Mr. Thomas left the 1971 Gremlin on T & G Trucks' lot under a similar arrangement with Mr. Crump.

The record includes the following testimony from Mr. Thomas:

Q. On this Gremlin car that you left there to be sold you didn't expect him to call you and get permission from you every time he had a prospective buyer, did you?

A. I didn't state that to him, no, sir.

Q. All right. So you knew he would be permitting people to drive that car, didn't you?

A. I would assume so, yes, sir.

Q. All right. And while you didn't know that Mr. Stevens or his daughter was driving it when they did drive it, if this driving was in connection with them wanting to buy the car, they had permission to drive it, didn't they?

A. They had his permission, I presume.

Q. And he was your agent, wasn't he?

A. Yes, I presume.

Q. So then they had permission, didn't they?

A. They had his permission.

Mr. Stevens was employed at T & G Trucks as a mechanic. He had been looking for a car for his daughter when he saw the Gremlin automobile parked on T & G Trucks' lot. Mr. Stevens testified to the following conversation with Mr. Crump:

Q. All right. So you said to him, if you will again, what did you say?

A. I said I think that's what I've been looking for, be all right for me to take it home with me and show my daughter, I did say show my daughter, by golly.

Q. All right. Then as far as some response from him, what was it?

A. He never did say yea or nay, didn't say not to.

Q. Did you take it then by not having a refusal that you had permission to take it home?

A. I did.

Q. You believe now that you did say show it to your daughter?

A. I believe I did, I wouldn't swear to that. I would like not to swear to that because I don't remember.

Q. You don't know whether you did or not. Then you took it home?

A. I took it home.

Q. And in driving it from your—from T & G out to your house, was there anything wrong with the operation of the car in any way, the function of it?

A. I thought the little car drove real nicely, and I was real proud of the way it drove, and I thought that would make her a good car, and when I—the only objection I had to it was the footfeed seemed to stick when I would make a right turn, and this—that is all I found wrong with it. And I figured a little oil on the little foot pedal, well, it is a remote control unit, a little oil there would correct that, but I didn't—I didn't oil it.

The above testimony shows, *inter alia*, that Mr. Crump did not object to Mr. Stevens taking the automobile. Upon arriving home with the 1971 Gremlin, Mr. Stevens told Debra to go look at the vehicle. He was then asked by his wife to go to the store for a loaf of bread. When Mr. Stevens returned to the automobile, Debra was seated behind the steering wheel, so he got in the front seat beside her. He stated "we was just going to circle the block and get a loaf of bread and back to the house." Then he testified to the following sequel of events:

Q. All right. Then you left the house with her driving?

A. Yes, sir.

Q. You planned to go south from your house down Temple, turn right on 2nd, go around to the grocery store and get the bread and back home?

A. Yes, sir.

Q. Now, did she stop at the stop sign there at 2nd Street?

A. Yes, sir.

Q. All right. Then what happened from that point up until she struck these people?

A. Well, when she took off the accelerator seemed to stick down like before, and it just went to spinning, and I reached over and turned the ignition off, and when I did, that locked everything. I mean, it just—it wouldn't—I couldn't turn it, I couldn't do nothing.

Q. Did you try to turn it?

A. Yes, sir.

Q. How did you do that?

A. I just reached and grabbed hold of the steering wheel and was trying to turn it.

Q. Then what direction or what course of travel did the vehicle take; was it a straight line, circle or half circle?

A. It made a circle.

Q. Okay.

A. Just spun around.

Q. Just so happened these people happened to be standing right over at the end of that circle?

A. That is where it happened, right there at the end of that circle.

Q. And of course, they would have no way of knowing that the end of that circle was going to be where they were, would they?

A. No, sir.

In addition to the above testimony, the record shows that the appellant pled as follows: "Defendant Stevens represented to Crump that he was interested in purchasing the Gremlin and desired to test drive it, whereupon Stevens drove it home with Crump's permission." This pleading is a judicial admission that, as a prospective purchaser, Mr. Stevens had Mr. Crump's permission to take the automobile home and test drive it. The effect of the appellant's judicial admission is to waive proof of the matters admitted in favor of the opposing party. *Esteve Cotton Co. v. Hancock*, 539 S.W.2d 145, 157 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.); 2 C. McCormick &

R. Ray, Texas Law of Evidence § 1127 (Texas Practice 2d ed. 1956).

■ Nevertheless, the testimony stated above, along with other evidence, shows that Mr. Thomas left the Gremlin vehicle on T & G Trucks' lot for sale; that he expected Mr. Crump to show the vehicle to prospective purchasers; that he expected prospective purchasers to drive the vehicle; that Mr. Stevens and his daughter were prospective purchasers of the vehicle; and that at the time of the accident, Debra Stevens was operating the vehicle with her father seated in the front seat. The evidence further shows Mr. Stevens specifically asked Mr. Crump if he could take the Gremlin home after work and then return the vehicle that night, and there is no evidence that Mr. Crump objected. Thus, under the circumstances, we conclude there is ample probative evidence to support the finding that William and Debra Stevens were using the vehicle with the implied consent of Mr. Thomas. Furthermore, after considering all of the evidence, we conclude also that the challenged finding is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust.

The appellant further contends the trial court erroneously concluded that William Stevens and Debra Stevens were covered by the omnibus clause of the policy because any implied permission for William Stevens to use the vehicle was non-delegable to Debra, an unlicensed driver. We disagree.

■ In support of its position, the appellant says William and Debra Stevens are precluded from coverage under the omnibus clause by virtue of the general rule that

the permission given by the named insured to another to use the named insured's car does not authorize the permittee to allow a third party to use the car, and that if the permittee does allow a second permittee to use the car, such use is not "with the permission of the named insured" as those words are used in the omnibus clause.

7 Am.Jur.2d *Automobile Insurance* § 116 (1963). Nevertheless, the general rule is not without exception. The applicable exception is as follows:

The "general rule" that a permittee may not allow a third party to "use" the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee, in using the vehicle, is serving some purpose of the original permittee. The courts generally reason that under such circumstances the second permittee is "operating" the car for the "use" of the first permittee and that such "use" is within the coverage of the omnibus clause.

7 Am.Jur.2d *Automobile Insurance* § 117 (1963).

We conclude that the above exception to the general rule is particularly controlling when, as here, the original permittee (Mr. Stevens) is riding in the car with the second permittee (Debra) and the vehicle is being used for the mutual benefit of all the parties including the named insured. In this case, William and Debra Stevens, as prospective purchasers, were using and testing the vehicle Mr. Thomas wanted to sell. For a holding in accord with our conclusion see *American Employers' Ins. Co. v. Liberty Mutual Ins. Co.*, 93 N.H. 101, 36 A.2d 284, 286 (1944), a prospective purchaser case decided on analogous facts.

■ The appellant further argues that the dicta in *Phoenix Insurance Co. v. Allstate Insurance Co.*, 412 S.W.2d 331 (Tex. Civ.App.—Corpus Christi 1967, no writ) and *Globe Indemnity Co. v. French*, 382 S.W.2d 771 (Tex.Civ.App.—Amarillo 1964, writ ref'd n. r. e.) make it clear that implied consent should not be extended to an unlicensed and incompetent driver. Although some conflict exists in the decisions of the various jurisdictions, the general rule is stated in Annot., 4 A.L.R.3rd 34 (1965) as follows:

In the absence of an express policy provision excluding liability on the part of the insurer, the fact that the driver was unlicensed ordinarily has not been treated as controlling or decisive of the question of the coverage of the omnibus clause where an accident occurred while the insured automobile was being used or driven by a third person with the consent of the named insured's original permittee.

For a case with similar facts as the case at bar concerning coverage of a prospective purchaser see *Wood v. Kok*, 58 Wash.2d 12, 360 P.2d 576 (1961).

Under the terms of the policy of insurance in question, an unlicensed driver, user or operator is not excluded from coverage and no Texas decision has excluded an unlicensed driver from coverage when the policy fails to do so. The uncontroverted evidence establishes that Debra Stevens was driving the vehicle with the permission of William Stevens, and that he was the original permittee with the implied consent of the named insured. Nevertheless, the appellant maintains that Cotton Crump is the original permittee, that Mr. Stevens is a subpermittee, and that Mr. Stevens cannot extend any implied consent to another subpermittee (Debra) or a fourth party in the chain. We do not agree that Mr. Crump is the original permittee. The evidence establishes that Mr. Thomas left his vehicle with T & G Trucks for Mr. Crump to sell rather than for him to drive, use or operate.

Under the circumstances, the trial court correctly concluded that William Stevens and Debra Stevens were persons insured under the omnibus clause of the insurance policy issued by the appellant to Glen J. Thomas, the named insured. We have considered all of appellant's points of error and conclude that none of the points present reversible error. Accordingly, the judgment of the trial court is affirmed.