**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellant,**

v.

**HARTFORD ACCIDENT & INDEMNITY INSURANCE COMPANY, Appellee.**

No. 20535.

Court of Civil Appeals of Texas, Dallas.

July 22, 1981.

Rehearing Denied Aug. 28, 1981.

Sidney H. Davis, Jr., W. Coleman Sylvan, Touchstone, Bernays, Johnston, Beall & Smith, Dallas, for appellant.

D. Paul Dalton, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and CARVER, JJ.

AKIN, Justice.

This is an appeal from a summary judgment granted to Hartford Accident & Indemnity Company on the ground that the driver of a vehicle involved in a collision was not covered by the omnibus clause of Hartford's policy. The principal question presented is whether the driver was operating the vehicle with the implied permission of the insured so as to be covered as an additional insured by the omnibus clause. We hold that the permission given by the insured to his daughter was so broad as to permit a finding of implied permission for the daughter to allow others to use the vehicle. Consequently, Hartford failed to negate implied permission, and the summary judgment must be reversed and the cause remanded.

The summary judgment evidence shows that Lee Henslee, Jr., the named insured under Hartford's policy had given his daughter permission to use a family automobile "while attending school in Dallas." In April 1977, the daughter told her roommate she could use the car while she (the daughter) was out of town. The car was involved in an accident and Southern Farm, the roommate's insurer, settled all claims filed by injured third parties. Southern Farm then sued Hartford claiming that Hartford should reimburse Southern for sums expended in the settlement because the roommate was covered under the omnibus clause of Hartford's policy.

Recovery by Southern Farm depends upon the language of the omnibus clause, which provides:

*Any other person using such automobile with the permission of the named insured,* provided his actual operation or *(if he is not operating) his actual use thereof is within the scope of such permission* .... [Emphasis added.]

Essentially, our question is whether the first permittee, the daughter, had implied authority "within the scope of such permission" from her stepfather, the insured, to permit her roommate to use the vehicle for the roommate's personal business. The evidence as to the "scope of permission" is contained in the insured's affidavit which states that he gave his daughter the car "for her use while attending school in Dallas," but that he "never specifically told her not to allow her friends to drive the car." We hold that a reasonable, permissible inference from this affidavit is that the daughter had general authority from the insured to use the vehicle herself and to authorize others to drive it. Consequently, a fact issue is raised with respect to whether the authority granted the daughter includes an implied permission to let others drive the vehicle.

The precise factual question presented here of whether a second permittee falls within the omnibus clause where the owner and named insured gave possession of the vehicle to a daughter to use without imposing any limitation or restriction as to the vehicle's use, has not arisen in Texas. However, Texas courts have held that the scope of permission granted must be determined from the surrounding circumstances and the relationship of the parties. *Coronado v. Employers' National Insurance Co.,* 596 S.W.2d 502, 505 (Tex.1979); *Royal Indemnity Co. v. H. E. Abbott & Sons, Inc.,* 399 S.W.2d 343, 345 (Tex.1966).

For example, in *Coronado, supra,* our supreme court noted "the construction of the permission given to a close family friend would be different from the specific permission given to a casual acquaintance." Indeed, an even more liberal construction should be applied to the scope of permission given to a family member, as opposed to just a family friend or acquaintance, in determining whether the first permittee (in this case the daughter) had implied authori-

ty from the insured to delegate to another (her roommate) the right to use the vehicle. Other courts, in making this determination have relied on the foreseeability that the first permittee will allow another to use the vehicle. *Hughes v. Southeastern Fidelity Ins. Co.,* 340 So.2d 293 (La.1976). In this case, it should have been foreseeable to the insured that his daughter might authorize her roommate to use the vehicle. In reaching the same result, other courts have reasoned that broad, unrestricted permission to use the insured vehicle puts the first permittee in the same position as if he were the owner, at least insofar as it authorizes him to allow others to use the vehicle. Thus, permission of the owner may be implied from such a broad grant of authority so as to render the third person an additional insured under the omnibus clause. *American Mutual Fire Ins. Co. v. Reliance Ins. Co.,* 268 S.C. 310, 233 S.E.2d 114, 117 (1977). Essentially, whether phrased in terms of foreseeability or whether phrased in terms of granting the first permittee the right to use the vehicle as his own, the result is the same. Because our supreme court in *Coronado* has adopted the "initial permission" rule which turns on the particular circumstances, including the relationship of the insured to the first permittee, we hold that where an insured grants unrestricted permission to a person to use an insured vehicle over an extended period of time, without restricting the first permittee's use thereof, a fact issue exists as to whether the insured had implicitly authorized the first permittee to use the vehicle as his own and, thus to allow others to drive it. Consequently, such a person, as the roommate here, could be an additional insured under the omnibus clause.

Our holding is supported by the Wisconsin Supreme Court's decision in *Krebsbach v. Miller,* 22 Wis.2d 171, 125 N.W.2d 408 (1963). In that case, the named insured turned possession of his vehicle over to his son to use in a distant city over a period of months, without placing restrictions upon the vehicle's use. As here, the son loaned the vehicle to a friend, who was involved in a collision. That court held that where the

named insured grants his permittee broad and unfettered dominion over the insured vehicle, he impliedly authorizes his permittee to allow a third person to use it, thus making that person an additional insured under the omnibus clause. The rationale of this decision, and others like it, is that by granting the first permittee complete dominion over the insured vehicle, the initial grant by the insured is broad enough to include an implied authority in the first permittee to authorize use of the vehicle by others, just as though the first permittee were the owner. *Baesler v. Globe Indemnity Company,* 33 N.J. 148, 162 A.2d 854, 857 (1960); *see* 4 A.L.R.3d 10 (1965).

Our holding is also supported by several Texas cases which have approved the principle that a factual determination is necessary as to whether the insured's initial permission was broad enough to imply authority in the first permittee to authorize others to use the vehicle. *Hartford Accident & Indemnity Corp. v. Lowery,* 490 S.W.2d 935, 938 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.); *Phoenix Ins. Co. v. Allstate Ins. Co.,* 412 S.W.2d 331, 334 (Tex. Civ.App.—Corpus Christi 1967, no writ). It follows that the summary judgment evidence in this case, which shows broad and unrestricted permission granted the daughter by the insured, does not negate implied permission as a matter of law. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 677 (Tex.1979); *see also Fantastic Homes, Inc. v. Combs,* 596 S.W.2d 502 (Tex.1979).

Reversed and remanded.

CARVER, Justice, dissenting.

I respectfully disagree with the majority and would reach the opposite conclusion upon the following grounds.

This is an appeal from a summary judgment holding that there was no implied authority in the first person permitted to drive an insured vehicle to extend such permission to a third party. I would affirm because the second permittee's use was for her own personal interests, as distinguished

from the purpose for which the car was originally loaned to the first permittee.

The facts are not in dispute but the legal conclusion that is, or may be, drawn from the facts is vigorously disputed. Martha Cousins came to Southern Methodist University from her home in Little Rock, Arkansas, with permission to use her mother's Buick which was insured for liability under her stepfather's Hartford policy. At school she became a roommate of Deborah Chastain who, similarly, had the use of her father's car insured for liability by Southern's policy. Just prior to April 16, 1977, Deborah's car broke down and since Martha was flying to her Arkansas home for a holiday, Martha left the Buick for Deborah to use. During Martha's absence, Deborah drove the Buick and was involved in a collision resulting in personal injury claims by the other car's driver and passenger as well as a property damage claim by the other car's owner. Between the two liability policies available to defend and pay these claims, it is undisputed that the Hartford policy describing the Buick is primarily liable if Deborah was driving the car with the permission, express or implied, of the named insured in the Hartford policy, i. e., Martha's stepfather, Mr. Henslee, because Deborah would, in that event, be an insured under the Hartford policy omnibus clause. The omnibus clause enlarges the persons insured under the liability policy from the named insured and members of his household to also include:

(2) Any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission . . . .

Southern, contending that Deborah was an "omnibus insured" under the Hartford policy, demanded that Hartford defend and pay. Hartford, contending that Deborah had neither the express nor implied permission of their named insured (Henslee) so as to be covered by their policy's omnibus clause, refused to defend or pay. Southern settled with the claimants and sued Hartford for reimbursement relying on the omnibus coverage. Hartford denied that omnibus coverage existed. Hartford moved for, and was granted, summary judgment from which judgment Southern appeals.

The Hartford motion for summary judgment correctly states that the question presented is whether Deborah Chastain was driving JoAnn Henslee's Buick with the permission of the named insured under a family automobile policy issued to Lee Henslee, Jr. by Hartford. As grounds for its motion, Hartford argues that the rule in Texas is that permission given by the named insured to another to use the named insured's automobile does not authorize the permittee to allow a third party to use the car, and if the permittee does allow a second permittee to use the car, such use is not "within the permission of the named insured," as those words are used in the omnibus clause of the insurance policy in question. In support of its motion, Hartford offered the affidavits of Martha, her mother, and her stepfather. In pertinent part Martha's affidavit states:

*Although my parents had never told me specifically that I was not to let anyone else drive the automobile,* I knew that my parents would not want Deborah Chastain or any of my friends to drive the automobile, and *prior to April 15, 1977 I had never permitted Deborah Chastain or any of my friends to drive that automobile.* [Emphasis added.]

In pertinent part, Martha's mother's affidavit states:

*Prior to April 15, 1977, I at no time gave my daughter, Martha Cousins, permission to allow someone else to drive my 1977 Buick Regal.* I assume that she knew better than to allow someone else to drive the car, and to the best of my knowledge she had never let anyone else drive the car prior to the date of the accident in which Deborah Chastain was driving. *I did not know Deborah Chastain prior to the accident* and certainly did not give her permission to drive the 1977 Buick Regal. On the date of the accident, my daughter, Martha Cousins, was visiting me in Arkansas. [Emphasis added.]

Martha's stepfather's affidavit states in part:

> My step-daughter had the 1977 Buick Regal in Dallas, Texas *for her use while attending school there in Dallas. I did not give her permission to allow someone other than herself to drive that automobile on April 15, 1977, nor had I given her such permission on any other prior occasion.* Although *I never specifically told her not to allow her friends to drive the car,* I assumed that she knew better than to let Deborah Chastain or any of her friends drive. I certainly did not authorize my step-daughter, Martha Cousins to allow Deborah Chastain to drive the 1977 Buick Regal on April 15, 1977. [Emphasis added.]

In its response to Hartford's motion, Southern argues that the motion should be denied because under Texas law the initial permittee's authority to allow others to use the automobile can be implied from all the facts and circumstances surrounding each case and that the issue of implied authority raised a fact issue to be determined by a jury. Southern's response was supported by Deborah's affidavit which in pertinent part stated:

> While Martha Cousins and I were roommates, she drove a 1977 Buick Regal. I never saw her parents who I believe lived in Arkansas at the time, drive the automobile nor exercise any control over the use of the automobile. Martha Cousins never told me or indicated in anyway that she did not own the automobile but, on the contrary, by her actions held herself as the owner of the automobile with absolute authority to grant permission to others to drive that automobile.

On appeal, Southern urges that both Texas authorities, as well as authorities from other jurisdictions, hold that the existence of the permission of the named insured (Henslee) to a second permittee (Deborah) depends upon the extent of authority, express or implied, given to the first permittee (Martha). I agree. *See Snyder v. Allstate Ins. Co.,* 485 S.W.2d 769 (Tex.1972). Southern then argues that the existence of such permission is a fact issue although the fact may be established or refuted as a matter of law by undisputed evidence. I agree. *See Snyder, supra.* Southern Farm further argues that since no express authority is asserted to have been given by her stepfather to Martha to permit others to drive the Buick, omnibus coverage of Deborah under Hartford's policy depends on the existence of implied authority in Martha to permit others to drive the Buick. I likewise agree to this premise based upon the record. Southern Farm concludes by arguing that since implied authority in these circumstances can be inferred from either (or both) (1) the broad nature of the express authority given or (2) the absence of restrictions within the authority given, Hartford's motion for summary judgment should not have been granted because Hartford did not conclusively negate the inference that such implied authority was given. Hartford responds that under Texas authorities any implied authority of the first permittee to permit the second permittee to operate the car rests upon whether the second permittee's use of the car was consistent with the original permission given (as distinguished from a use in the personal and private interests of the second permittee). It then argues that it has conclusively established that Deborah's use was not consistent with the original permission given to Martha and is therefore entitled to summary judgment. *Kolb v. Texas Employers' Ins. Ass'n,* 585 S.W.2d 870 (Tex.Civ.App.—Texarkana 1979, writ ref'd n. r. e.). I would agree.

In fact situations involving what is called a first (Martha) and second (Deborah) permittee, our supreme court in *Snyder, supra,* recognized "that two fact questions are presented: (1) authority for the permittee [Martha Cousins] to allow a third person [Deborah Chastain] to drive or use the car, and (2) the original permittee's [Martha Cousins] consent to such use by a third person [Deborah Chastain]." 485 S.W.2d at 772. Our parties do not dispute that Martha gave Deborah permission to use Martha's car while Martha was visiting her home and while Deborah's car was inoperative. Thus, our inquiry is limited to the

authority of Martha from the named insured (Henslee) to permit Deborah to use the car. This authority may be express or implied under *Snyder, supra*, and cases cited therein. However, since there is no contention in our case that express authority existed, our precise question is whether Hartford's summary judgment proof conclusively negated the existence of implied authority from Henslee to Martha to permit Deborah to use the car.

An analysis of Texas precedents is necessary because both Southern and Hartford rely on the same cases as supporting their arguments. The earliest Texas case bearing on the point is apparently *Globe Indemnity Co. v. French*, 382 S.W.2d 771 (Tex.Civ. App.—Amarillo 1964, writ ref'd n. r. e.). In that case, Rockwell, the named insured, loaned his car to McCauley, a friend, to use in attending a dance, knowing that McCauley was double dating with French. While they were at the dance, French (arguably with McCauley's permission) used the car to take his date back to the dormitory early to fulfill her required dormitory hours. While on the way back to the dance, French was in an accident. Rockwell's loan of the car to McCauley was in general terms and did not include any express limitation that only McCauley was to drive. French argued, much as Hartford does here, that since Rockwell knew French was double-dating with McCauley, it was only realistic to assume that he had the implied permission to drive the vehicle on the occasion in question. The Amarillo court reasoned that:

> Rockwell testified he did not even know if French had a driver's license. He did not remember having even met French before Tuesday preceding the Friday dance. They could not have been called friends from the record here made and were not fraternity brothers. . . . Therefore, to affirm the judgment of the lower court we would in effect be holding that when a college student loans his car to a friend of long standing all other students riding in the car have his implied permission to drive it regardless of his knowledge of their habits or regardless of his previous relationship with

them. This court is not willing to extend the doctrine of implied consent that far until higher authority requires us to do so.

As in *French*, the summary judgment proof in our case establishes that Henslee, our named insured, had no knowledge of Deborah, or of any usage or practice with her, or any other relationship with her, that would support an implied permission from Henslee to Deborah to operate the Buick.

Another case cited by the parties is *Phoenix Ins. Co. v. Allstate Ins. Co.*, 412 S.W.2d 331 (Tex.Civ.App.—Corpus Christi 1967, no writ). In that case, a church member, Gilster, loaned his car to the assistant pastor and youth director, Stiles, to return some church youth from a summer program out of town. Stiles allowed the president of the youth program, DeLane, to actually drive the car and he had a collision. *Phoenix* held that since the *actual use* contemplated by Gilster's loan of the car was being accomplished whether Stiles or DeLane was at the wheel, implied permission to DeLane was supported. As to the broad authority or absence of restriction relied upon in our case by Hartford, *Phoenix* does mention these elements as not inconsistent with its ruling in these words:

> Gilster had on several other instances loaned the car for use by Father Stiles in connection with his work with the Catholic Youth Organization, and had never expressed any limitation or any particular interest as to who should actually drive the car on such occasions. By his very silence the trial court could reasonably assume that, *by reason of their past dealings and the circumstances of the case, Gilster* had confidence in the good priest's discretion and judgment as to such matter, and realized or should have realized that he might delegate the driving to some other competent person. This court can judicially note that it is not unusual for members and friends of church organizations to loan their cars on special occasions for use by the organization or its leader for out of town trips without designating who shall drive. We bear in

mind that the car was loaned for the use of Father Stiles in his church and Youth Director capacity, and "use" is the term used in the omnibus clause. [Emphasis added.]

*Phoenix* discusses *French* and declares there is no conflict between the two holdings because in *French* the use of the car was for the personal interests of French as distinguished from the use for which the car was loaned; whereas, in *Phoenix*:

> [T]he evidence was that the car was loaned to Father Stiles, *not as a private individual on a private mission*, but as assistant pastor and Youth Director of his church performing duties as such. It had been loaned to him in such official position under similar circumstances on a number of other occasions. James De-Lane was not "using" the car on a *private mission* of his own. He as president of the C. Y. O. was asked by Father Stiles as Youth Director to drive the car while it was being "used" in connection with the director's duties, Father Stiles was still "using" the car in such duties and for the purpose for which it was borrowed even after he got out of it at the Rectory. [Emphasis added.]

In our case, it is evident that Deborah's use of the Buick was not the use for which Henslee loaned the car to Martha, but rather was for a private mission in furtherance of Deborah's personal interests. Any implied consent by Henslee to Deborah's use under these circumstances cannot rest merely on Henslee's broad authority to Martha or the absence of restrictions to Martha since the use by Deborah is not within the scope of the actual authorized use or purpose.

Such an analysis is consistent with the reasoning in *Hartford Accident and Indemnity Corp. v. Lowery*, 490 S.W.2d 935 (Tex. Civ.App.—Beaumont 1973, writ ref'd n. r. e.). That case involved two brothers who lived next door to each other and had engaged, separately and together, in the cattle business for twenty-five years. One brother owned a pickup truck insured by Hartford. The other brother, noticing his

cow (in this instance) had escaped from a pasture, instructed his employee to take the pickup and catch the cow, but he had a collision instead. There an express authority between the brothers for use of the pickup, but no express authority for the second permittee to use the pickup. *Lowery* discusses the brothers' frequent common business and their frequent common use of each other's personal property, including vehicles, in conducting that business and concludes:

> In view of all of this evidence, we conclude that only a strained construction could lead to a conclusion that Miller did not have Giles Lowery's permission to drive the insured pickup on the occasion in question. There is no evidence of deviation in the record. *Miller was not on a mission of his own, but to catch a cow for Herbert Lowery.* It could not be argued that Herbert Lowery did not have permission to drive this pickup. The nature of the permission given to Herbert Lowery by his brother, Giles Lowery, could not be broader. Herbert Lowery had permission to use anything Giles Lowery owned, including this pickup. If Herbert Lowery had been driving at the time of the collision, no question as to permission could have been raised. Yet, coverage was denied in this case, even though the driver of the pickup was Giles Lowery's employee who had driven the pickup "I imagine about 10,000" times and who kept the pickup at his home part of the time. *Another significant, undisputed fact is that the pickup was being used at the time of the collision solely in the interest of Herbert Lowery*, who unquestionably had permission to use the pickup. Considering the broad nature of the initial permission and the conduct of Giles Lowery, Herbert Lowery and Miller together with all the attending facts and circumstances, we find that the evidence supports the findings by the trial court *that Miller had the insured's implied consent to drive the pickup on the occasion in question.* [Emphasis added.]

In our case there are no facts consistent with Deborah having Henslee's implied per-

mission, nor was the use by Deborah "solely in the interest of" Martha. Deborah was on a mission of her own, not to "catch a cow" for Martha. Implied permission of Henslee for Deborah to operate the Buick cannot rest alone on the "broad permission" to Martha under *Lowery* since Deborah's use was in her own interests, not Martha's interest.

The most recent authority cited by the parties is *United Services Auto Ass'n v. Stevens*, 596 S.W.2d 955 (Tex.Civ.App.— Amarillo 1980, no writ) which concerned another Debra who, with her father, test drove a car owned by Thomas and placed by him with T & G Trucks to show and sell as a used car. The father was the first permittee, but during the test drive he allowed Debra to "take the wheel." The Amarillo court adhered to the premise that permission may be implied to the second permittee so long as the use is within the scope of the original permission. *Stevens*, after detailing the facts, held:

> We conclude that the above exception to the general rule is particularly controlling when, as here, the original permittee (Mr. Stevens) is riding in the car with the second permittee (Debra) and the vehicle is being used for the mutual benefit of all the parties including the named insured. In this case, William and Debra Stevens, as prospective purchasers, were using and testing the vehicle Mr. Thomas wanted to sell.

In our case I find no use by Deborah "for the mutual benefit of all parties including the named insured" but to the contrary our record confirms that Deborah's use was private and personal for Deborah's sole benefit. Implied permission of Henslee to Deborah cannot be found under our record in reliance upon *Stevens*.

In the light of the foregoing authorities, I would hold that since our facts are undisputed that Henslee, the named insured of the Buick car, loaned the Buick to Martha "for her use while attending school," no implied permission was given thereby for Martha to loan the Buick to Deborah for a private mission furthering Deborah's own

personal interest as distinguished from Martha's "use while attending school." Since Southern's cause of action depended upon Henslee's implied permission to Deborah and since Hartford's summary judgment proof conclusively negated such implied permission in Deborah, I would hold that the trial court did not err in entering summary judgment for Hartford.